## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## S. M. GORIEB v. CHARLES D. FOX, ET ALS., MEMBERS OF CITY COUNCIL OF ROANOKE, VIRGINIA, ET ALS.

September 29, 1926.

1. POLICE POWER—*Abridgement—Exercise of Police Power.*—Section 159 of the Constitution of 1902 declares that the exercise of the police power of the State shall never be abridged. The legislature may, in the exercise of the police power, restrict personal and property rights in the interest of public health, public safety, and for the promotion of the general welfare.

2. POLICE POWER—*Conferred Upon Municipalities—Extent of Power—Exercise of Police Power.*—The legislature may confer the police power of the State upon cities and towns located therein. The extent of this power is difficult to define, but it is elastic and expands automatically to protect the public against the improper use of private property to the injury of the public interest. It must never be exercised except in a reasonable manner and for the welfare of the public.

3. MUNICIPAL CORPORATIONS—*Building Restrictions—Building Lines—Zones—Police Power.*—It is within the police power of the legislature to pass an act authorizing the councils of cities and towns to divide their municipalities into "districts" or "zones," and to establish building lines on the streets to which all property owners must conform; and such an act, if passed in the interest of the health, safety, comfort, or convenience of the public, or for the promotion of the public welfare, when not unreasonable, is constitutional and valid.

4. MUNICIPAL CORPORATIONS—*Validity of Zoning and Building Line Ordinances.*—Although the authorities are in conflict on the validity of zoning and building line ordinances the weight of authority and reason supports the validity of such ordinances.

5. PUBLIC OFFICERS—*Uniform Rule of Action—Arbitrary Discretion—Validity of Ordinances and Statutes Vesting Discretion in Public Officials.*—While the courts have held that, generally speaking, statutes and ordinances which vest arbitrary discretion in public officials, without prescribing a uniform rule of action, by which they shall be guided, are unconstitutional and void, this rule is subject to a qualification, where it is difficult or impracticable to lay down a definite rule, or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare.

6. MUNICIPAL CORPORATIONS—*Zoning and Building Lines—Ordinances Vesting Discretion in Council—Case at Bar.*—A city ordinance regulating the erection of buildings in a city vested discretion in the council to grant or refuse a permit to erect buildings closer to the street than provided for in the ordinance.

   *Held:* That the ordinance was valid.

7. MUNICIPAL CORPORATIONS—*Building Lines—Discretion Vested in Public Officials—Case at Bar.*—Where a city has been built up without much regard to building lines the establishment of any uniform building line may result in unequal burdens on the landowners. Therefore, a provision in an ordinance providing for the establishment of building lines authorizing the council to grant special permits to erect buildings not in conformity with an existing building line and nearer the street than such line is not invalid.

8. MUNICIPAL CORPORATIONS—*Building Lines—Discretion Vested in Council to Depart from Building Line not an Arbitrary Discretion.*—Where an ordinance establishing building lines vested in the city council the authority to depart from such lines by granting special permission to erect buildings not in conformity with the lines, the discretion thus vested in the council is not an arbitrary or whimsical, but a reasonable, discretion, and does not authorize the council to grant a permit to A and refuse one to B under like circumstances and conditions. If they should exercise this discretion, in an arbitrary manner, the party aggrieved would be entitled to relief through the courts.

9. MUNICIPAL CORPORATIONS—*Building Lines—Permission from Council to Depart from Established Lines—Error, if any, in Favor of Appellant—Case at Bar.*—In the instant case the petitioner, a landowner, desired to erect a store on the street upon which his land abutted. He applied to the building inspector for a permit which was refused. He then petitioned the council for permission to erect a store on the property. The council passed a resolution permitting him to build a brick store thirty-four and two-thirds feet from the street line. Petitioner contended that under no construction of the building ordinance could this restriction of thirty-four and two-thirds feet from the street be sustained. Under the ordinance the building would have had to be located forty-four and two-tenths feet from the street line.

   *Held:* That if the council erred in permitting the landowner to build thirty-four and two-thirds feet from the street, it was an error in his favor of which he could not complain.

10. MUNICIPAL CORPORATIONS—*Zoning and Building Lines—Validity of Statutes and Ordinances—Case at Bar.*—The act of 1922, page 46, authorizing councils of cities to divide their cities into districts or zones, and to establish set-back building lines, and compel the property owners to conform thereto, and the ordinance of the city of

Roanoke of August 26, 1922, as amended on July 11, 1924, regulating the erection of buildings in the city, passed under the authority of the statute, are constitutional and valid.

Error to a judgment of the Circuit Court of the city of Roanoke, upon a petition for a writ of mandamus. Judgment for defendants. Petitioner assigns error.

*Writ of mandamus denied.*

The opinion states the case.

*W. V. Birchfield, Jr.*, for the plaintiff in error.

*R. C. Jackson*, for the defendant in error.

West, J., delivered the opinion of the court.

By an act of the General Assembly of Virginia, approved February 17, 1922, councils of cities were authorized to divide their cities into districts or zones, and to establish set-back building lines, and compel the property owners to conform thereto. The act (Acts of Assembly 1922, p. 46) reads as follows:

"That for the promotion of the health, safety, morals, comfort, prosperity and general welfare of the general public, the council, or other governing body, of any city may, by ordinance, divide the area of the city into one or more districts, of such shape and area as may be best suited to carry out the purposes of this act, and in such district or districts may establish set-back lines, regulating and restricting the location of buildings and other structures; their height and bulk; the percentage of lot to be occupied by buildings or other structures; and the size of courts and other open spaces, and the trade, industry, residences and

other specific uses of the premises in such district or districts, provided that nothing in this act contained shall be construed as intended to authorize the impairment of any vested right."

On August 26, 1922, the council of the city of Roanoke, acting under the authority granted by this act, passed an ordinance regulating the erection of buildings in the city. Sections 243, 244, and 245 of the ordinance, as amended on July 11, 1924, read as follows:

Section 243. "That all buildings hereafter to be erected in the city of Roanoke must be built to correspond to the existing house line of the houses built in the same block unless special permission otherwise granted by the city council; provided, that if the buildings to be erected shall be located upon a switching track of any commercial railroad it shall be permitted to build closer to the street than the line of the existing houses."

Section 244. "That the line of the existing houses shall be the line upon which sixty per cent of the houses in the block in which the proposed building is intended to be erected, have with relation to the street, and the said proposed buildings must be at least as far from the street as the line established by said sixty per cent of the houses. The word 'block' herein used does not refer to any entire city square, but shall be construed to be that portion on the same side of the street upon which the new building is proposed, bounded by the nearest intersecting streets to the right and left of said proposed building."

Section 245. "That if there be not more than two houses in the block upon which said building is proposed to be erected, that the building line of said new structure may be such line as shall be fixed upon by an average line for the owner of said building, provided,

however, that in no event shall the front of the proposed building be nearer than twenty feet from the front line of his said lot, exclusive of the sidewalk, in case his said grant shall carry him to the street line. Provided, however, that the council within their discretion may grant or refuse a permit to erect buildings closer to the street than hereinbefore provided, in any block wherein there now exists buildings used for business or mercantile purposes, accordingly as their judgment will dictate whether the proposed buildings will subserve the general welfare of the neighborhood and city, and, provided further, that they shall grant a permit whenever in their judgment the block to contain the proposed building has a greater value for business or mercantile than for residential purposes.''

On January 19, 1923, the council passed an ordinance dividing the city into two districts, one designated as the ''business district'' and the other as the ''residential district.''

S. M. Gorieb is the owner of several building lots located in the ''residential district'' on the northeast corner of Patterson avenue and Eleventh street, fronting on Patterson avenue 139 feet and on Eleventh street 150 feet, back to an alley. On the eastern portion of the lot he has a dwelling house, but there is no building on the western portion.

Gorieb applied to Douglas Magann, building inspector for the city, for a permit to erect a store building on the undeveloped corner lot. The permit was refused and on June 12, 1924, Gorieb petitioned the city council to grant him a permit to erect a brick store building on the property, fronting forty feet on Patterson avenue and running back adjoining Eleventh street for seventy-five feet. After an investigation, the council passed a resolution granting

him a permit to build a brick store thirty-four and two-thirds feet from the street line on Patterson avenue.

On August 11, 1924, Gorieb served upon the defendants a notice and petition for a writ of mandamus to compel the city to issue a building permit for the erection of a store building on the corner of Patterson avenue and Eleventh street, adjacent to the avenue or nearer thereto than thirty-four and two-thirds feet.

The petition alleges that the ordinances authorize the council to grant or withhold a permit to any individual at their pleasure, in violation of both State and Federal constitutions, and that said ordinances are unconstitutional and void.

Defendants filed their joint answer and demurrer, relying on the act of February 17, 1922, and alleging in the answer that the ordinance, properly construed, does not violate the State or Federal Constitution, and should be sustained.

The case was heard upon the pleadings and evidence, submitted, and the court entered an order adjudging that the ordinance was valid in all respects and dismissed the petition. This is a writ of error to that judgment.

The plaintiff in error relies upon the following assigments of error:

"(1) The court erred in holding that the city council had the right to establish a set-back building line and in the same ordinance reserve the right not to be guided by the provisions of said ordinance.

"(2) The court erred in holding the city ordinance constitutional as it constitutes 'a taking' of private property for public use without compensation, therefore, a violation of the provisions of both Federal and State constitutions.

"(3) The court erred in holding that the ordinance

was applicable under the facts presented in this case and in holding that under any construction of said ordinance the petitioner was prohibited from building nearer the street line than thirty-four and two-thirds (34⅔) feet."

[1] The Virginia Constitution declares that the exercise of the police power of the State shall never be abridged. Section 159.

The legislature may, in the exercise of the police power, restrict personal and property rights in the interest of public health, public safety, and for the promotion of the general welfare. *Eubank* v. *City of Richmond*, 110 Va. 751, 67 S. E. 376, 19 Ann. Cas. 186; *Welch* v. *Swasey*, 193 Mass. 364, 79 N. E. 745, 23 L. R. A. (N. S.) 1160, 118 Am. St. Rep. 523; Freund on Police Power, secs. 118, 128; *Attorney General* v. *Williams*, 174 Mass. 477, 55 N. E. 77, 47 L. R. A. 314; *People* v. *D'Oench*, 111 N. Y. 361, 18 N. E. 862; *Barbier* v. *Connolly*, 113 U. S. 27, 5 S. Ct. 357, 28 L. Ed. 923; *Bacon* v. *Walker*, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499.

The *Eubank Case* involved the validity of a "building line" ordinance and of the act of the General Assembly of Virginia pursuant to which it was passed. The court held the act was constitutional. This case was appealed to the Supreme Court of the United States and is reported in 226 U. S. at page 137, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192. While the judgment was reversed, the court did not hold that the enactment of the statute authorizing the establishment of building lines in cities was not within the police power of the State, but reversed the case because the city ordinance passed in pursuance of the statute required the street committee, upon request of the owners of two-thirds

of the abutting property on any street, to establish a building line; thereby enabling one set of property owners to control the property rights of others, without fixing any standard by which they should be guided.

In the case of *Welch* v. *Swasey, supra*, involving the validity of building regulations, adopted by authority of an act of the legislature, the court held that the statute and the city ordinance were both constitutional. The judgment was affirmed by the Supreme Court of the United States. *Id.*, 214 U. S. 91, 29 S. Ct. 567, 53 L. Ed. 923.

[2] It is not contradicted that the legislature may confer the police power of the State upon cities and towns located therein. The extent of this power is difficult to define, but it is elastic and expands automatically to protect the public against the improper use of private property to the injury of the public interest. It must never be exercised except in a reasonable manner and for the welfare of the public.

In *Noble Bank* v. *Haskell*, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062, Ann. Cas. 1912A, 487, the court, discussing the police power, said: "It may be said in a general way that the police power extends to all the great public needs. *Samfield* v. *United States*, 167 U. S. 518 [17 S. Ct. 864, 42 L. Ed. 260]. It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare."

[3] It is within the police power of the legislature to pass an act authorizing the councils of cities and towns to divide their municipalities into "districts" or "zones," and to establish building lines on the streets to which all property owners must conform; and such an act, if passed in the interest of the health, safety,

comfort, or convenience of the public, or for the promotion of the public welfare, when not unreasonable, is constitutional and valid. *Eubank* v. *City of Richmond, supra; Windsor* v. *Whitney*, 95 Conn. 357, 111 Atl. 354, 12 A. L. R. 669; *Halselle* v. *Ferguson*, 109 Tex. 144, 202 S. W. 317; *Spector* v. *Building Inspector of Milton*, 250 Mass. 63, 145 N. E. 265; *Lincoln Trust Co.* v. *Williams Building Corporation*, 229 N. Y. 313, 128 N. E. 209; *Ware* v. *City of Wichita*, 113 Kan. 153, 214 Pac. 99; *Miller* v. *Board of Public Works*, 195 Cal. 477, 234 Pac. 381, 38 A. L. R. 1479.

In *Windsor* v. *Whitney, supra,* the court, while considering the question of set-back lines, said: "If a building line six feet from an owner's street line will tend to preserve the public health, add to the public safety from fire, and enhance the public welfare by bettering living conditions and increasing the general prosperity of the neighborhood, can it be done by legislative authority in the exercise of the police power where such an exercise of the police power is reasonable under the circumstances of the case? We hold that it can, and that this is not a taking of property in violation of the constitutional right, for which compensation must be made. The body of the law upon the subject of the police power is the growth of comparatively recent years. It has been said to be still in the formative stage.

"The line between eminent domain and the police power is a hard one to hold with constancy and consistency, and it is not surprising that now and again these two great powers of government have been confused. A few years ago it was, so far as the rule had been announced, undoubted that restrictions could not be imposed upon a private property solely for aesthetic considerations. Later it has been said by

high authority that aesthetic considerations may be regarded in connection with recognized police power considerations. And now Dillon, in the latest edition of his 'Municipal Corporations,' sec. 695, says: 'The law on this point is undergoing development and perhaps cannot be said to be conclusively settled as to the extent of the police power.' *Welch* v. *Swasey*, 214 U. S. 91, 53 L. Ed. 923, 29 Sup. Ct. 567, affirming 193 Mass. 364, 79 N. E. 745, 23 L. R. A. (N. S.) 1160, 118 Am. St. Rep. 523, tends to justify the author's conclusion.

"Where the free exercise of one's rights of property is detrimental to the public interest, the State has the right to regulate reasonably such exercise of control under the police power. And that, of course, means without compensation."

[4] On the question of the validity of zoning and building line ordinances, the authorities are in conflict. A number of them sustain the contention of the plaintiff in error that such ordinances are unconstitutional and void. *Val Fruth* v. *Board of Affairs*, 75 W. Va. 456, 84 S. E. 105, L. R. A. 1915C, 981; *St. Louis* v. *Hill*, 116 Mo. 527, 22 S. W. 861, 21 L. R. A. 226; *Philadelphia* v. *Linnard*, 97 Pa. 242.

The weight of authority and reason, as it seems to us, supports the contrary view.

[5, 6] All the presumptions are in favor of the validity of the ordinance. While the courts have held that, generally speaking, statutes and ordinances which vest arbitrary discretion in public officials, without prescribing a uniform rule of action by which they shall be guided are unconstitutional and void, this rule is subject to a qualification, "where it is difficult or impracticable to lay down a definite rule, or where the discretion relates to the administration of a police

regulation and is necessary to protect the public morals, health, safety and general welfare." 12 A. L. R. 1435, 1447, citing numerous cases.

In *Wulfsohn* v. *Burden*, 241 N. Y. 288, 150 N. E. 120, 43 A. L. R. 651, the court, as appears from the syllabus, held that the city of Mount Vernon had authority, under the police power, to establish zones or districts which should be limited to dwellings; that the fact that the zoning ordinance limits the use and depreciates the value of certain property within its limits does not affect its constitutionality; that a zoning ordinance is not invalid because of discrimination in the set-back from the street and in rear yards, as between apartment houses and private dwellings; and that the city has the power to limit the height of apartment houses to be erected within residential districts, and prescribe the open area which shall surround them.

A New York statute (Laws 1910, c. 348, sec. 25) required certain private bankers to obtain a license from the State Comptroller before they were allowed to do business, and authorized the Comptroller to "approve or disapprove the application in his discretion." It was held in *Engle* v. *O'Malley*, 219 U. S. 128, 31 S. Ct. 190, 55 L. Ed. 128, that the power vested in the Comptroller was not "arbitrary or capricious," and that the statute was constitutional and valid.

*Yee Bow* v. *Cleveland*, 99 Ohio St. 269, 124 N. E. 132, 12 A. L. R. 1424, involved the validity of a statute requiring a laundryman to secure a license from the health commissioner who was required to ascertain whether the applicant's place of business was sufficiently sanitary to protect the public health before granting the license. It was contended that the applicant's rights were left to the arbitrary discretion

of the commissioner. The court held the ordinance valid, saying: "It is exceedingly doubtful whether a fixed standard could be adopted by the city in its regulation of these features." In disposing of the case the court said: "It is now generally held that *quasi* judicial duties and administrative functions may be imposed upon administrative officers for the purpose of ascertaining the conditions under which the law or ordinance becomes effective. It will not be presumed that the action of the administrative officer will be either arbitrary or unwarranted Should it so prove to be, the aggrieved person would have the right to relief through the courts."

In *Cutrona* v. *Wilmington* (Del. Ch.), 124 Atl. 658, 663-4, the court said: "The right of dominion over one's own property, to use it as he sees fit so long as the rights of others are not infringed upon, is a right which not even the legislative power of the State can take from the individual. With respect to such proprietary interests, the extent of the State's power is that of regulation, and such regulation must be of a kind that operates impartially and alike upon all persons similarly situated. Regulation in matters of this kind can never extend to the point of bestowing upon any official or officials the power to permit or deny, according as whim, fancy or favoritism may suggest, the enjoyment of the right by the individual. The equal protection of the laws guaranteed by the fourteenth amendment to the Constitution of the United States denounces all attempts to subject the property rights of individuals to the unrestrained discretion or control of administering officials, *except in those special instances where the police power of the State may, within the appropriate field reserved to it, interpose its restraining arm*." (Italics ours.)

The city of Roanoke, Virginia, has an ordinance providing that no person shall operate a motor bus on the streets of the city until he has passed an examination before the superintendent of police as to his ability to operate an automobile and his knowledge of the traffic laws and satisfied the superintendent of his character and qualifications. This court held, in *Taylor v. Smith*, 140 Va. 217, 124 S. E. 259, that the city could, in the execution of its police power, invest its officers with a reasonable discretion in the performance of their duties whenever it is necessary for the safety and welfare of the public; that such discretion was not arbitrary nor whimsical, and that the ordinance was valid.

[7, 8] Where a city has been built up without much regard to building lines, each citizen locating the buildings on his land according to his own wishes and without regard to the rights of others, the location of the buildings is frequently such that the establishment of any uniform building line will result in unequal burdens upon the landowners. To overcome such inequalities, section 243 of the Roanoke ordinance authorizes the city council to grant special permission to erect buildings not in conformity with the existing house line in the same block and nearer the street than such house line. The discretion thus vested in the council is not an arbitrary or whimsical, but a reasonable, discretion, and does not authorize the council to grant a permit to A and refuse one to B under like circumstances and conditions. If they should exercise this discretion in an arbitrary manner, the party aggrieved would be entitled to relief through the courts.

[9] In determining the distance Gorieb's store building should be located from the street line, the council, acting under the ordinance of August 26, 1922, took the general average line of all the houses in the block on both sides of the street. At the time the permit was

Concurring Opinion.

granted the amended ordinance of July 11, 1924, which is controlling in this case, was in effect, which provides that the word "block," as used in the ordinance, shall be construed to be that portion on the same side of the street upon which the new building is proposed, bounded by the nearest intersecting street to the right and left of the said proposed building.

There are only five buildings on the same side of the street between the intersecting streets. Three of them are located 44.2 feet, the fourth one 44.3 feet, and the fifth one 37.5 feet from the street line. Treating the difference of one-tenth of a foot as *de minimis*, and considering the fourth building as located only 44.2 feet from the street, the existing house line upon which sixty per cent of the houses in the "block" are located would be 44.2 feet from the street, and under section 244 of the ordinance the Gorieb building would have to be located 44.2 feet from the street line. If the council erred in permitting him to build thirty-four and two-thirds feet from the street, it was an error in his favor of which he cannot complain.

[10] For the foregoing reasons, we are of opinion that the ordinance under consideration is constitutional and valid in all respects, and that there is no reversible error in the judgment complained of.

*Writ of mandamus denied.*

CAMPBELL AND CHICHESTER, JJ., concurring:

We concur in the result, but we do not concur in the view that that part of the ordinance which confers upon the city council of the city of Roanoke the power to grant, in their discretion, special permission to individuals to build on a line other than the existing house line, is valid.