Statement.

# Wytheville,

## GEORGE C. MARTIN v. CITY OF DANVILLE.

### June 23, 1927.

1. MUNICIPAL CORPORATIONS—*Filling Stations—Regulation of Location.*—Under the Virginia Statutes, the city of Danville has the authority to regulate the location of gasoline filling stations.

2. MUNICIPAL CORPORATIONS—*Filling Stations—Prohibited in Residential Sections—Exceptions where Consent of Property Owners is Obtained.*—An ordinance of the city of Danville clearly prohibited the erection of gasoline stations in the city of Danville at locations in residential sections but provided that such stations might be erected if the written consent of a certain proportion of the property owners abutting on the street in the immediate vicinity (500 feet in each direction) was first secured. The council unquestionably had power to make the inhibition absolute, and to allow no exceptions. Because the greater includes the less, it must follow that the power to make the prohibition absolute included the power to impose reasonable conditions and to allow exceptions.

3. MUNICIPAL CORPORATIONS—*Filling Stations—Constitutionality of Ordinance—Prohibited in Residential Sections—Exceptions where Consent of Property Owners is Obtained.*—An ordinance of the city of Danville clearly prohibited the erection of gasoline stations in the city of Danville at locations in residential sections but provided that such stations might be erected if the written consent of a certain proportion of the property owners abutting on the street in the immediate vicinity (500 feet in each direction) was first secured.

   *Held:* That it could not be said that the ordinance was clearly arbitrary and unreasonable, having no substantial relation to the health, safety, morals, or general welfare; and, therefore, the ordinance should be sustained as constitutional.

4. STATUTES—*Ordinances—Reasonableness—Court will not Substitute its Judgment for That of the Legislative Body.*—If the question of the reasonableness of a statute or ordinance is fairly debatable, the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of deciding the question.

Error to a judgment of the Corporation Court of the city of Danville.

*Affirmed.*

The opinion states the case.

*Withers & Brown,* for the plaintiff in error.

*A. M. Aiken* and *Meade & Meade,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

The facts of this case are sufficiently stated in the dissenting opinion.

Our conclusion is that all of the questions here raised have been, in effect, and for sufficient reasons, decided adversely to the contentions here made by the plaintiff in error by the decisions of this court and those of the Supreme Court of the United States. Among these are, the refusal of this court, on the 31st day of March, 1925, to award this petitioner a writ of mandamus against the city of Danville, requiring the issuance of a permit to use the identical lot for purposes prohibited by the same ordinance which is here involved, and upon substantially the same grounds upon which the demurrer is based in this case (128 S. E. 927); *Gorieb* v. *Fox,* 145 Va. 554, 134 S. E. 914, which was affirmed by the Supreme Court of the United States on the 31st day of May, 1927 (47 S. Ct. 675), 71 L. Ed. ——; *Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 71 L. Ed. 175, 47 Sup. Ct. 114; *Welch* v. *Swasey,* 214 U. S. 91, 29 S. Ct. 567, 53 L. Ed. 923; *Zahn* v. *Board of Public Works,* —— U. S. ——, 71 L. Ed. ——, 47 S. Ct. 594, June 1, 1927, page 704.

In the latest case decided by the Supreme Court of the United States (*Gorieb* v. *Fox*), referring to the question of reasonableness, which generally arises in such cases, this is said: "State legislatures and city

councils, who deal with the situation from a practical standpoint, are better qualified than the courts to determine the necessity, character and degree of regulation which these new and perplexing conditions require; and their conclusions should not be disturbed by the courts unless clearly arbitrary and unreasonable."

[1-3] It must be conceded that the city of Danville, under the Virginia statutes, has the authority to regulate the location of gasoline filling stations. It has undertaken to do so by an ordinance which follows closely the Chicago ordinance, prohibiting bill boards, which was reviewed and upheld by the Supreme Court of the United States in *Thomas Cusack Co.* v. *Chicago,* 242 U. S. 526, 61 L. Ed. 472, L. R. A. 1918A, 136, 37 Sup. Ct. 190, Ann. Cas. 1917C, 594. The Danville ordinance clearly prohibits the erection of gasoline stations in the city of Danville at locations in residential sections like that upon which the plaintiff in error insists here that he has the right to erect such a station. As in the Chicago ordinance, however, there are exceptions in its application—that is, it is provided that such stations may be erected if the written consent of a certain proportion of the property owners abutting on the street in the immediate vicinity (500 feet in each direction) is first secured. The prohibition is general and applicable to all who are similarly situated, but is subject to exceptions in favor of all who can meet the conditions imposed. The council unquestionably has the power to make the inhibition absolute, and to allow no exceptions, but it has, in this instance, in its discretion, declined to exercise this plenary power. It seems to us clear that because the greater includes the less, it must follow that the power to make the prohibition absolute includes the power to impose reasonable conditions and to allow such exceptions. However this

may be, we cannot say that the ordinance under review is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Gorieb* v. *Fox, supra.*

[4] It is a settled rule of the Supreme Court of the United States, if the question of reasonableness is fairly debatable, to hold that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of deciding the question. *Zahn* v. *Board of Public Works, supra.*

We are, therefore, of opinion to sustain the ordinance under review as constitutional. In this we simply agree with and follow the Supreme Court of the United States, the final arbiter of such questions. It follows that the conviction will be sustained.

·*Affirmed.*

CAMPBELL, J., dissenting:

The plaintiff in error was convicted by the police justice of the city of Danville upon a warrant charging him with violating a city ordinance regulating the location and erection of gasoline filling stations and other commercial buildings in residential districts of the city. From the judgment of the police justice, plaintiff appealed to the corporation court. At the trial a demurrer was interposed to the warrant. This demurrer was overruled. A jury was dispensed with, by consent, and the case was tried by the court, which found Martin guilty, as charged in said warrant, and imposed a fine of $100.00 upon him.

By his demurrer to the warrant, plaintiff in error challenges the validity of the ordinance and the statute by virtue of which it was passed on the ground that they are violative of constitutional rights.

The statute enacted by the General Assembly in 1922 (Laws 1922, chapter 43) provides that for the promotion of the health, safety, prosperity, morals, comfort and general welfare of the general public, the council, or other governing body, of any city may divide the area of the city into one or more districts, and may regulate and restrict the location of buildings and other structures, and the trade, industry, residence and other specific uses of the premises in such district or districts. The ordinance passed by virtue of this act is as follows:

"Section 1. That it shall be unlawful for any person, firm or corporation, for themselves or as agents, renters or lessees, to locate, build, erect, construct, maintain or operate any public gasoline or oil filling station or sales depot on or within 150 feet from the curb line of any street in the city, or to construct or maintain a driveway from the street over the curb and sidewalk to such station or depot, or erect any other building to be used for commercial, trading, or industrial purposes, when three-fourths of the buildings on both sides of the street for a distance of five hundred (500) feet in either direction from the proposed location of each wall of such oil filling station, sales depot, or other commercial building, are used exclusively for residence purposes (and if there be no such residence buildings on one of said sides of the street, this ordinance shall not apply) without first securing the written consent of two-thirds (2/3) of the owners of property abutting on the street for a distance of five hundred feet in each direction from the median line of such proposed oil filling station or sales depot, or other industrial building according to the frontage on both sides of the street.

"Section 2. Any person, firm or corporation, or any agent, renter or lessee of any person, firm or corporation who shall violate any of the provisions of this ordinance shall be fined not less that $100.00 nor more than $500.00 for each offense, and each week of continued violation of this ordinance shall constitute a separate offense after the first prosecution has begun.

"Section 3. This ordinance shall not apply to, or be operated against any owner or operator of any public gasoline or oil filling station, sales depot, or other commercial or trading building which has heretofore been erected."

There is no dispute of the charge that the plaintiff in error was a citizen of Danville; that he was the owner of a lot on West Main street; that he proposed erecting thereon a gasoline filling station for commercial purposes and a building to be used as a drug store and apartment house; that he did not first obtain the written consent of two-thirds of the owners of property abutting on the street for a distance of five hundred feet in each direction from the median line of the proposed station and building.

The question, whether or not the act approved February 17, 1922, is constitutional, has been concluded by the decision of this court in *Gorieb* v. *Fox*, 145 Va. 554, 134 S. E. 914, which decision has recently been affirmed by the Supreme Court of the United States.

The act being constitutional, there remains only the question: Is the ordinance passed by the city council a reasonable exercise of the police power?

It is well settled that a municipal corporation is but a department of the State, and that the legislature may invest it with all the powers such a municipality is capable of receiving. *Richmond* v. *Va. Ry. & Power Co.*, 141 Va. 96, 126 S. E. 353.

What constitutes the police power has received the consideration of almost, if not all, the courts of the various States.

In *City of Richmond* v. *C. & P. Tel. Co.*, 127 Va. 612, 105 S. E. 127, Judge Prentis said: "In the police power, which cannot be surrendered or defined with circumstantial precision, but which, except as restrained by constitutional inhibition, is unlimited, is found the inexhaustible source of those new legislative regulations which in response to the needs of a progressive civilization are designed to promote the public convenience and general prosperity."

The reason for the existence of the police power is given in Cooley, Const. Lim. 248, thus: "The police power is founded in public necessity and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary. Therefore, the return for their sacrifice, through the exersice of police power, should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security."

While now conceding that the *Gorieb Case, supra* (which was decided after this writ of error was granted), is against the "regulation" and "zoning" contentions, it is urged by plaintiff in error that the provision in the ordinance which requires, as a condition precedent to the owner's use of his property for the purposes stated, the obtaining of the written consent of two-thirds of the owners of other property abutting on the street, is

in derogation of the purpose of the act of the General Assembly, and, therefore, an infringement upon the rights guaranteed him by the State and Federal Constitutions. To sustain this contention, *Eubank* v. *Richmond*, 226 U. S. 137, 33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1714B, 172, is relied upon. That case brought under review a judgment of the Hustings Court of the city of Richmond, affirming a judgment of the Police Court of the city, imposing a fine on Eubank for alleged violation of an ordinance of the city fixing a building line. The judgment was affirmed by this court, but, upon a writ of error from the Supreme Court of the United States, the judgment was reversed.

Defendant in error contends that the instant case is ruled by the holding in *Cusack Company* v. *City of Chicago*, 242 U. S. 526, 37 C. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594. The ordinance there under consideration provided that it shall be unlawful for any person, firm or corporation to erect or construct a billboard in any block on any public street in which one-half of the buildings on both sides of the street are used exclusively for residence purposes, without first obtaining the consent in writing of the owners owning a majority of the frontage of the property on both sides of the street in the block in which such billboard is to be erected, etc. Mr Justice Clarke, delivering the opinion of the court, held the ordinance valid and sought to distinguish that case from the *Eubank Case*, saying: "The plaintiff in error relies chiefly upon *Eubank* v. *Richmond*, 226 U. S. 137 [33 S. Ct. 76, 57 L. Ed. 156, 42 L. R. A. (N. S.) 1123, Ann. Cas. 1914B, 192]. A sufficient distinction between the ordinance there considered and the one at bar is plain. The former left the establishment of the building line un-

touched until the lot owners should act and then made the street committee the mere automatic register of that action, and gave to it the effect of law.    The ordinance in the case at bar absolutely prohibits the erection of any billboards in the blocks designated, but permits this prohibition to be modified with the consent of the persons who are to be most affected by such modification.    The one ordinance permits two-thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one-half of the lot owners to remove a restriction from the other property owners.    This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances.''

A close analysis of the *Cusack Case* discloses that the court drew a distinction between a building ordinance and a billboard ordinance and placed the latter in a class to itself, as coming within the principle applicable to ''offensive structures.''

In disposing of the contention that the ordinance was invalid by reason of a delegation of power to the property owners, the court said:    ''The claim is palpably frivolous that the validity of the ordinance is impaired by the provision that such billboards may be erected in such districts as are described if the consent in writing is obtained of the owners of a majority of the frontage on both sides of the street in any block in which such billboard is to be erected.    The plaintiff in error cannot be injured, but obviously may be benefited by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute.    He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property.    *Tyler* v.

*Judges of Registration*, 179 U. S. 405 [21 S. Ct. 206, 45 L. Ed. 252]; *Plymouth Coal Co. v. Pennsylvania*, 232 U. S. 531 [34 S. Ct. 359, 58 L. Ed. 713]. To this we may add that such a reference to a neighborhood of the propriety of having carried on within it trades or occupations, which are properly the subject of regulation in the exercise of police power, is not uncommon in laws which have been sustained against every possible claim of unconstitutionality, such as the right to maintain saloons (*Swift v. People*, 162 Ill. 534 [44 N. E. 528, 33 L. R. A. 470]), and as to the location of garages (*People v. Ericson*, 263 Ill. 368 [105 N. E. 315, L. R. A. 1915D, 607, Ann. Cas. 1915C; 183]). Such treatment is plainly applicable to offensive structures."

To justify the existence of a law which restricts a citizen in the use of his property, it must be a law which conserves the public morals, is conducive to public health, enhances public safety or promotes the public welfare. Let us, then, test the Danville city ordinance by these considerations.

It is important to observe that the act of 1922 provides "for the promotion of the health, safety, morals, comfort, prosperity and *general* welfare of the *general* public." (Italics ours.) The benefits and restrictions of the act are not confined to "a neighborhood," but apply to the general public. While a neighborhood may fall within the definition of the word "public," it is impossible to embrace the general public in the term "neighborhood." Therefore, the ordinance must apply to the general public and not merely to the particular locality.

That the basis of the ordinance in respect to the filling station is the danger to be incurred by the general public, if it is permitted to be erected, is mani-

fest by what is said in the brief of the defendant in error as follows:

"But a filling station may be so located, with reference to the actions of traffic and its other surroundings, as to cause danger to life, to impede traffic, and to become a nuisance.

"The court will take judicial notice of the congested and dangerous condition of the city streets, everywhere, caused by innumerable automobiles using them; resulting in an appalling number of deaths and injuries; requiring traffic policemen at every prominent street crossing to protect travelers, and greatly puzzling the lawmaking bodies in devising means and remedies to decrease the danger.

"The court will also take judicial notice of the character of a filling station and its relation to the operation of automobiles. It is a necessity to automobiles, supplying them with gasoline—which it keeps stored in dangerously large quantities—oil, grease, accessories, free air, free water, free service. The presence of such a filling station attracts automobiles, congregates them, causes them to slowdown, to cut across lines of traffic to interfere with and block regular traffic, to increase congestion in the streets, to increase danger of collision, especially at the intersection of streets in crowded districts. And it is natural that the owner of a gasoline filling station seeks a location on streets most generally used."

By what process of reasoning, then, can one arrive at the conclusion that an ordinance is reasonable which provides in one place that it shall be unlawful for a citizen to erect a potential death trap at a given point, without the consent of a two-thirds majority of the property owners, and then further provides that a citizen, with such consent, may erect one, or a dozen

similar potential death traps, in the same locality, perhaps at the same point, should there be a change in ownership?

The council, by the passage of the ordinance, says that by reason of the oil waste, ill smelling grease and noxious fumes connected with a filling station, it is a menace to the public health to erect same in a residential district, and then provides that the health of the general public may be endangered if the whim or caprice of a majority of a particular neighborhood so will and direct.

It is to be observed that the consent to be obtained does not depend upon the consent of two-thirds of the *people* living within five hundred feet of the proposed structure, but upon the consent of two-thirds of the owners of property abutting on the street involved. Thus, one person may own two-thirds of the property and by virtue of such ownership be invested with the power to say to A., "I grant you written consent to erect a menace to the safety and health of the general public who have to use this particular street;" and then say to B., "From you I withhold such consent for no valid reason whatever."

The ordinance is not a regulation, because it is unstable. Its enforcement may depend upon the shifting ownership of property. It is a matter of common knowledge that the personnel of the owners may change overnight. Thus, the owner who gives consent today may not be the owner who withholds consent tomorrow. Then, again, it is impossible to conceive that the legislature intended that one's right in property should be restricted or enlarged by owners who do not reside in the block affected. There is no provision in the ordinance that the owners shall be residents of the locality.

In the *Cusack Case, supra,* the crux of the holding is summed up in this sentence: "The ordinance in the case at bar absolutely prohibits the erection of any billboards in the block designated, but permits this prohibition to be modified with the consent of the persons *who are to be most affected by such modification.*" (Italics added.) Affected how? By reason of the change in property values, by a menace to health, or by being subjected to danger.

Unless the owners lived in the locality, or visited the same, the last two considerations could not apply. If they were nonresident owners, they could only be affected by property values. No court has ever held that one citizen should be deprived of his right in property in order that property value of some other citizen might be enhanced. The basic principle upon which the police power rests is the public welfare. If the establishment of a gasoline filling station at a given point is a potential danger to the life or limb of the general public, or a menace to the health thereof, then a minority should not be made the arbiter of life or death to the individuals composing the general public. Government by a bureaucracy is sufficiently odious, but government by a minority, accountable to no one, would become unbearable.

Of course the State, by virtue of its retention of the police power, has reserved the right of regulation of all instrumentalities affecting the general welfare, but this regulation must be of such a character that it operates alike upon all its citizens.

In *Taylor* v. *Smith,* 140 Va. 217, 124 S. E. 259, Judge Burks said: "We are of the opinion that a city may, in the execution of its police powers, invest its administrative and executive officers with a reasonable discretion in the performance of duties devolved upon

them to that end, whenever it is necessary for the safety and welfare of the public. Such a discretion is neither arbitrary nor capricious."

By reason of our complex system of government, it is essential that public officers in general, and the members of such governing bodies as town or city councils in particular, should be invested with a reasonable discretion in the discharge of their public duties, but it was never intended by the lawmaking power that when such powers were so delegated to them that the officials could, in turn, confer them upon an irresponsible portion of the body politic, or upon nonresident property owners, in no wise connected with the administration of governmental affairs.

In *Stone* v. *Mississippi*, 101 U. S. 814, 25 L. Ed. 1079, Mr. Chief Justice Waite said: "But the power of governing is a trust committed by the people to the government, no part of which can be granted away. The people, in their sovereign capacity, have established their agencies for the preservation of the public health and the public morals, and the protection of public and private rights. These several agencies can govern according to their discretion, if within the scope of their general authority, while in power; but they cannot give away nor sell the discretion of those that are to come after them, in respect to matters the government of which, from the very nature of things, must vary with varying circumstances."

When we seek to apply the holding in the *Cusack Case, supra*—which in reality dealt with an aesthetic question—to the ordinance here involved, *which deals with the safety, health and general welfare of the general public*, the *Cusack Case* is not in point. Without setting them forth, the cogent reasons given by Mr. Jus-

tice McKenna in the *Eubank Case, supra,* are, I think, controlling here.

What has been said relative to the gasoline filling station is applicable to the second charge in the warrant.

I do not think it was the intention of the legislature to permit the council to delegate to a group of resident or nonresident property owners the power to erect a fire hazard in a residential locality.

While I am of the opinion that the council of the city of Danville has the undisputed right and power, both under the provisions of the city charter and pursuant to its reasonable exercise of the police power with which it is invested, to pass an ordinance prohibiting or regulating the erection and maintenance of gasoline filling stations, I am also of the opinion that the ordinance here involved, for the reasons stated, is an unreasonable exercise of the police power, and, therefore, should be declared unconstitutional and void.