(No. 34015.—

STEPHEN SALADINO, Appellant, *vs.* THE CITY OF SOUTH BELOIT, Appellee.

*Opinion filed September 25, 1956.*

ROBERT K. CLARK, of Rockford, for appellant.

HENRY H. CALDWELL, of Rockford, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Stephen Saladino, the appellant, after first having sought unsuccessfully a change of zoning through administrative processes, filed a complaint in the circuit court of Winnebago County alleging that the zoning ordinance of the city of South Beloit, the appellee, is unconstitutional and void in its application to certain of his property, and praying that the city be enjoined from enforcing the same. Following a hearing of the cause, the complaint was dismissed for want of equity and this direct appeal has followed upon the chancellor's certification that the validity of a municipal ordinance is involved and that the public interest requires this court's consideration of the controversy.

The disputed property, which is described throughout the record as lots 133 and 134 of Viets Addition to the city of South Beloit, is vacant and unimproved and fronts on Shirland Avenue adjacent to the Illinois-Wisconsin State line. By a zoning ordinance adopted in April, 1954, all of Viets Addition was classified "B-Business District." Under this classification some seventy-five separate and

distinct uses are permissible but not the operation of a tavern, such a use being restricted to areas classified "C-Business Districts." Appellant purchased lots 133 and 134 in April, 1955, with full knowledge of their use limitations and thereafter, in July, 1955, petitioned the city to change the zoning of the lots from "B" to "C" business district, so that he could operate a tavern thereon. The zoning board of appeals recommended the change be granted but on the condition that the city council would see fit to issue a tavern license for the location. The council, however, denied appellant's application for a liquor license and referred the zoning petition back to the board of appeals. At this point appellant applied for and received a building permit to erect a commercial building on his lots. Subsequently the zoning board of appeals made an unqualified recommendation favoring the rezoning; the council, however, rejected the recommendation and this action by appellant for injunctive relief has ensued. We learn also from the record that appellant has initiated a *mandamus* action, undisposed of as yet, to compel the city to issue him a liquor license.

The overt purpose of appellant both in this court and in the tribunals below has been to compel the rezoning of lots 133 and 134 so that he might operate a tavern thereon. In seeking judicial relief on the constitutional grounds of due process and equal protection of the laws he relies, in the first instance, on the oft-repeated generality that it is the right of every citizen to use his property according to his own will, and he argues that there are no considerations of the public health, safety, welfare or morals, to which such right must give way in this instance. There is in appellant's position the assumption of a fact which does not exist, namely, that he has an inalienable right to use his property for tavern purposes. In *Great Atlantic and Pacific Tea Co. v. Mayor of Danville,* 367 Ill. 310, this

court, after pointing out that the unbridled use of intoxicating liquors is inimical to the welfare of the people, summarized as follows (p. 317): "The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise. The regulation and restriction of the right to sell alcoholic beverages is referable to the police power which has resided in the States since the beginning of the present system of government. The policy of the State has long been to consider the right to traffic therein as permissive, only." Again, in *Hornstein* v. *Illinois Liquor Control Com.* 412 Ill. 365, at 369, it is said: "Legislation with respect to liquor traffic does not come within the protection of the fourteenth amendment to the Federal constitution unless it is apparent that its real object is not to protect the community or to promote the general well-being but, instead, under the guise of police regulation, to deprive the owner of his liberty or property without due process of law." See also: *Crowley* v. *Christensen,* 137 U.S. 86, 34 L. ed. 620; *Harrison* v. *People ex rel. Raben,* 222 Ill. 150.

The decisions of this court in *People ex rel. Morrison* v. *Cregier,* 138 Ill. 401, and *People ex rel. Fitzgerald* v. *Harrison,* 256 Ill. 102, authoritatively establish that the police power is properly exercised by regulations which control the location of liquor vending establishments, so long as there is no unreasonable discrimination between persons and places not founded upon a reasonable difference in conditions. In reaching such a result the court made the following observations in the *Cregier case* (p. 415): "If prohibited districts are created at all, their boundaries must be established somewhere, and it may well be that the situation of premises on one side of the line may not

differ essentially from that of those on the other. To a great extent the precise location of the boundary lines must be left to the arbitrary discretion of the municipal authorities. The fact that premises are omitted from the districts which might just as wisely have been included * * * in no way militates against the reasonableness of the prohibition so far as it goes." That these same concepts govern where the police power is exercised through the media of zoning regulations may be gathered from the frequently expressed views that zoning boundaries must begin and end somewhere, that mere proximity to a boundary line will not render a zoning regulation discriminatory or unreasonable, and that where there is ground for a fair difference of opinion, the legislative judgment as to zoning classification will not be disturbed by the courts. *La Salle National Bank* v. *City of Chicago,* 6 Ill.2d 22; *Mundelein Estates, Inc.* v. *Village of Mundelein,* 409 Ill. 291; *Neef* v. *City of Springfield,* 380 Ill. 275.

By the ordinance here in question, the city of South Beloit affirmatively restricted the location of taverns to class "C-Business Districts," along with amusement places, clubs, dance halls, motels and trucking terminals and, by omission, excluded them from classes "A and B—Business Districts" wherein innumerable sales and service uses are permitted. There is no showing in this record that the city was prompted by arbitrary or discriminatory considerations or that the limitations in the classifications employed are unrelated to the public good. On the other hand, many reasons related to the public welfare, safety and morals may be suggested which cause it to be both desirable and reasonable that the shopping and service areas of a city's business districts, to which its citizens are drawn to fulfill their daily needs, be kept from the influences attendant to tavern operations. Similarly, there is no showing here that the boundary lines between the use districts involved were so drawn as to discriminate against any

particular persons or properties. We cannot say, therefore, that the ordinance contravenes any provision of the State or Federal constitutions.

Insofar as the ordinance applies to the particular property of the appellant there is likewise presented in the record no evidence that its effect is confiscatory, unreasonable or arbitrary. At best there is presented only a question of whether appellant's land should be classified as a "B— Business District" or as a "C—Business District." Without reviewing the nature of nearby zoning or the characteristics of the neighborhood in question, we deem it sufficient to say that there is room for a fair and debatable difference of opinion as to which of such zoning classifications should prevail. Under such circumstances the determination is one to be made by the city council and not by this court. (Cf. *Herzog Building Corp.* v. *City of Des Plaines,* 3 Ill.2d 206; *Dunlap* v. *City of Woodstock,* 405 Ill. 410.) Unless an abuse of discretion is shown, it is not proper for this court to constitute itself a zoning commission and substitute its judgment for that of the legislative body charged with the primary duty of determining zoning classifications.

For the first time in this court, appellant presents the theory that, in view of the many and diverse uses permitted in a "B—Business District," the exclusion of a tavern business therefrom is so arbitrary and capricious as to violate section 22 of article IV of our constitution which protects against special legislation. Such a contention not only comes too late on appeal, but is also refuted by the decisions of this court which hold that a classification can properly be made by statute or ordinance, without doing violence to the constitution, where there are real differences between the classes and where the selection of the particular class, as distinguished from the others, is reasonably related to the evils to be remedied by the statute or ordinance. (*Josma* v. *Western Steel Car and Foundry*

*Co.* 249 Ill. 508; *Charles* v. *City of Chicago,* 413 Ill. 428.)
The differences between a tippling house and the other businesses permitted under the "B" classification, as well as the relative evils they present to the public, need not be elaborated upon.

For the reasons stated the decree of the circuit court of Winnebago County is affirmed.

*Decree affirmed.*