# Richmond

## NATIONAL MARITIME UNION OF AMERICA, AFL-CIO, ETC., ET AL. v. CITY OF NORFOLK.

April 24, 1961.

Record No. 5199.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Sidney H. Kelsey,* for the appellants.

*T. L. Sawyer* and *Toy D. Savage, Jr. (Leonard H. Davis, City At-torney; Jonathan W. Old; Willcox, Cooke, Savage and Lawrence,* on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

National Maritime Union of America, AFL-CIO, Joseph Curran, John T. Dillon and Joseph J. Carleno, in their own behalf and on be-half of the membership of the National Maritime Union, and NMU Realties, Inc., filed a bill of complaint against the City of Norfolk, under the Declaratory Judgment Act, Title 8, Sections 578-585, Code of Virginia, 1950, seeking to have declared void and unconstitutional Section 18 of the Zoning Ordinance of the City of Norfolk, as it applied to the complainants. After the defendant filed its answer, the court heard the case and held the ordinance to be valid and constitu-tional. Complainants were granted an appeal.

Complainant NMU Realties, Inc., is the owner of certain real property, located in the 1100 block of Boissevain Avenue in the City of Norfolk. The National Maritime Union, AFL-CIO, a labor union composed of seamen engaged in the shipping industry in interstate commerce, desired to construct and operate, on this real property, a union hiring hall. The union had, since 1937, maintained a hiring hall at various locations in the City of Norfolk, and since 1947, had occu-pied a building for such purpose at 334 West York Street, in Norfolk. This latter property was condemned for the construction of a high-

way, and as a result, the Boissevain Avenue property was acquired for a new location of the hiring hall.

The City had adopted its first comprehensive zoning ordinance in 1924, placing the area within its limits in various districts for residential, commercial and manufacturing uses. The 1924 ordinance contained no requirement for a use permit for a desired activity within a proper district. In 1950, the City adopted a new zoning ordinance, reclassifying the various districts in the city, in accordance with an over-all plan, and in addition, adopted Section 18, now in question before us. This section required the obtaining of a use permit, from the City Council, for twenty-one enumerated uses (later increased to twenty-seven), which did not originally include hiring halls.

On February 13, 1951, the City Council amended its zoning ordinance so as to permit hiring halls to be located in certain districts, but also amended Section 18 by requiring a use permit for "hiring halls and other places of assembly for or the assignment of employment" in districts C-2 through M-3. These latter designations refer to different types of commercial and manufacturing districts. For example, the M-2 district, in which the complainants' Boissevain Avenue property is located, is a light manufacturing district.

In June, 1957, complainant union filed its application for a use permit for a hiring hall on its Boissevain Avenue property. In accordance with the provisions of Section 18 of the zoning ordinance, the City Planning Commission held a hearing on the application, and thereafter recommended to the City Council against the granting of the use permit. On February 4, 1958, after a hearing, the City Council refused to grant the use permit.

The complainants first filed an action in the District Court of the United States for the Eastern District of Virginia, seeking to nullify the action of the City Council. On the motion of the City, the proceedings in the United States Court were stayed, but the court retained the cause on its docket for a reasonable time to afford the complainants an opportunity to proceed in the State courts of this commonwealth "to determine the constitutionality and construction of the ordinance of the City of Norfolk." The case now before us was filed as a result of this action by the United States Court.

The complainants have assigned a number of errors to the action of the lower court, some of which they have not urged in argument before us, and which we will, therefore, not consider. In any event

the complainants agree that this appeal presents two questions to be decided by this Court, as follows:

1. Does the ordinance of the City of Norfolk, in requiring complainants to obtain a use permit for their hiring hall, invade a field which has been preempted by the United States so as to preclude control by State and local action?

2. Does the ordinance have valid standards and criteria to guide the City Council in its actions relating to the granting and denying of use permits thereunder?

Complainants concede the constitutionality of the basic zoning ordinance, and the City's right, by such zoning ordinance, to exclude their hiring hall from all zoning districts in the city except C-2 through M-3. Their sole objection is to Section 18 of the ordinance.

The gist of complainants' first contention is that since Congress has legislated in the field of labor-management, as it affects interstate commerce, it has preempted this field, and the state and local governments are powerless to deal with the same subject. They rely on provisions of the National Labor Relations Act, 61 Stat. 140, 65 Stat. 601; 29 U. S. C. A. 157, 158, to support their position, and assert that the ordinance in question infringes on this preempted Federal authority.

The question of Federal preemption in the complex field of labor-management relations has had a long and perplexing history, in both Federal and State courts. Numerous cases involving Federal versus State power in the labor field have been decided by the Supreme Court of the United States since Congress first legislated in this field. In some instances the right of the States to act in the field has been denied, but in other instances it has been upheld. Typical of the cases denying state action are the following:

*Hill* v. *Florida*, 325 U. S. 538, 65 S. Ct. 1373, 89 L. ed. 1782, holding invalid a Florida statute requiring licensing of business agents of unions, filing of reports and payments of fees by unions, and providing for injunctive relief for failure to comply.

*International Union, etc.* v. *O'Brien*, 339 U. S. 454, 70 S. Ct. 781, 94 L. ed. 978, striking down a Michigan statute which prescribed prerequisites for striking.

*Amalgamated Assoc., etc.* v. *Wisconsin Board*, 340 U. S. 383, 71 S. Ct. 359, 95 L. ed. 364, declaring void a state statute under which injunction had been issued and which made it compulsory to arbitrate in public utility labor disputes.

*Garner* v. *Teamsters Union,* 346 U. S. 485, 74 S. Ct. 161, 98 L. ed. 228, voiding a state court injunction restraining unfair labor practices not involving violence.

*Weber* v. *Anheuser-Busch, Inc.,* 348 U. S. 468, 75 S. Ct. 480, 99 L. ed. 546, denying state power to enjoin, under state restraint of trade statute, unfair labor practices which may reasonably be deemed to come under the National Labor Relations Act.

*San Diego Building Trades Council* v. *Garmon,* et al. 359 U. S. 236, 79 S. Ct. 773, 3 L. ed. 2d 775, denying state court authority to award damages for losses resulting from peaceful picketing.

Typical of those cases decided by the Supreme Court of the United States upholding state action in the labor field are the following:

*Carpenters Union* v. *Ritter's Cafe,* 315 U. S. 722, 62 S. Ct. 807, 86 L. ed. 1143, upholding a state court's injunction, issued under state anti-trust statute, restraining picketing by union whose grievance with employer was that he had contracted to have a building erected in another location by a builder who employed non-union labor.

*Allen-Bradley Local, etc.* v. *Wisconsin Employment Relations Board,* 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154, upholding state board's prohibition of threatening and obstructive tactics and mass picketing by a labor union.

*International Union, etc.* v. *Wisconsin Board,* 336 U. S. 245, 69 S. Ct. 516, 93 L. ed. 651, upholding state board's order against union's unlawful strike activity.

*Algoma Plywood Co.* v. *Wisconsin Board,* 336 U. S. 301, 69 S. Ct. 584, 93 L. ed. 691, upholding state statute forbidding maintenance of membership clause in union contract unless the contract is approved by two-thirds of the employees in a referendum conducted by state board.

*Plumbers Union* v. *Graham,* 345 U. S. 192, 73 S. Ct. 585, 97 L. ed. 946, upholding the right of a state court to enjoin picketing to force an employer to violate the Virginia right to work statute.

*United Construction Workers* v. *Laburnum,* 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025, another Virginia case, upholding an award of damages by a state court against a union for threatening and intimidating action in a labor dispute.

Complainants rely on Sections 7 and 8 of the National Labor Relations Act, 61 Stat. 140, 29 U. S. C. A. 157, 65 Stat. 601, 29 U. S. C. A. 158. Section 7 secures to employees covered by the act the right of self organization and of collective bargaining, or the right to refrain

from such activities. Section 8 delineates certain unfair labor practices on the part of both employers and employees that are proscribed.

From an analysis of the National Labor Relations Act and the cases decided interpreting the Act, it is clear that Congress has not occupied and closed the field of labor relations affecting interstate commerce to the exclusion of the States' traditional authority to exercise their police power, provided the state action does not contravene the provisions of the Act.

It is well settled that the power of a state to legislate in the exercise of its police power is coordinate with the power of the Federal government to legislate in matters affecting interstate commerce.

It is also an established principle that an intention of Congress to exclude the States from exerting their police power must be clearly manifested. *Napier* v. *Atlantic Coast Line R. R.,* 272 U. S. 605, 47 S. Ct. 207, 71 L. ed. 432; *Maurer* v. *Hamilton,* 309 U. S. 598, 60 S. Ct. 726, 84 L. ed. 969.

The Supreme Court of the United States, in *Reid* v. *Colorado,* 187 U. S. 137, 23 S. Ct. 92, 47 L. ed. 108, said:

"It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested. This court has said—and the principle has often been reaffirmed—that in the application of this principle of supremacy of an act of Congress in a case where the State law is but the exercise of a reserved power, the repugnance or conflict should be direct and positive, so that the two acts could not be reconciled or consistently stand together." (187 U. S., at page 148).

And in *Kelly* v. *Washington,* 302 U. S. 1, 58 S. Ct. 87, 82 L. ed. 3, the Supreme Court of the United States said this:

"When Congress does exercise its paramount authority, it is obvious that Congress may determine how far its regulation shall go. There is no constitutional rule which compels Congress to occupy the whole field. Congress may circumscribe its regulation and occupy only a limited field. When it does so, state regulation outside that limited field and otherwise permissible is not forbidden or replaced." (302 U. S., at page 10).

Here, complainants say that Congress has excluded the City of Norfolk from exercising its police powers by requiring, in an otherwise valid zoning ordinance, a use permit for their hiring hall. No such intention has been manifested by Congress; it has not said that

its regulation shall go to this extreme length. The Supreme Court of the United States has not so held in any case which has been cited to us, or which we have been able to find.

The City, in adopting its zoning ordinance, was acting under a valid delegation of police power to it by the Commonwealth of Virginia "for the promotion of the health, safety, morals, comfort, prosperity or general welfare of the general public." Acts of Assembly, 1926, Chapter 197.

Unless it can be shown that the City has, by the requirement for a use permit, sought to control the complainant union's "fundamental right to self organization and collective bargaining" and to remove labor's "protection against unfair labor practices of employers," *Allen-Bradley Local* v. *Wisconsin Board, supra,* the ordinance must be sustained.

We are of the opinion that no such showing has been made in this case.

■ The City, in requiring a use permit for certain types of activity, recognized, as many municipalities have recognized, that it is impossible to deal, in advance, in the enactment of a zoning ordinance, with all of the problems surrounding the uses to be later proposed in a particular district. Thus the requirement for a use permit was set out in the ordinance, so that the City Council could make certain that the proposed use would not adversely affect the public interest if placed in a particular location within the permitted zone.

The learned trial Judge, in a written opinion, found that there was a substantial relationship between the requirement for a use permit for hiring halls and the general welfare and public convenience. He wrote, and we adopt his views, as follows:

"The evidence discloses that under certain circumstances the operation of such a hall may well change the character of the adjoining and adjacent property. There is a tendency for boarding houses, moving picture theatres, taverns and pool halls to locate in their vicinity. Needless to say, the number of persons served and the number of times they must attend the hiring hall to ascertain if they have secured employment would affect such a development. The entire character of a neighborhood may well be changed by the location of a hiring hall, to the extent that the district may no longer be acceptable for the use that it was intended and set aside by the zoning ordinance. The proximity of a residential district and the

route or routes that would normally be taken by persons going to and from such a hall are matters that should be considered by Council in granting or refusing such permits. Zoning ordinances are primarily designed for future and anticipated growth. *West Brothers Brick Co.* v. *Alexandria, supra,* p. 283. The character of hiring halls varies depending to a large extent upon the number of persons served, the number of times their presence is required on the premises and the industry involved. Preferably such halls should be situate within the area occupied by the industry to be served. A misplaced hiring hall depreciates property values in the neighborhood. All hiring halls involving idle men, are potential police problems. An acceptable location for one hiring hall is often unacceptable for another."

Complainants have taken the position before us that by denying the use permit for their hiring hall in the 1100 block of Boissevain Avenue, the City Council has excluded them from the City of Norfolk completely. That question is not before us. We are only concerned with the validity of the requirement for a use permit in the first instance. We determine that question in favor of the validity of the requirement.

Complainants' first contention is without merit.

Complainants also contend that Section 18 is void and unconstitutional on its face because it fails to set out standards to govern the City Council in granting and denying permits.

The portion of the disputed section which is applicable here reads as follows:

"4. If the City Council shall find that the use for which a Use Permit is sought will not (1) adversely affect the health or safety of persons residing or working in the neighborhood of the proposed use, (2) will not be detrimental to the public welfare or injurious to property or improvements in the neighborhood, and (3) will be in accord with the purposes of this ordinance and the City Plan of the City of Norfolk, it shall issue the Use Permit, provided that all other provisions of law and ordinance shall have been complied with. In granting any Use Permit, the Council shall designate such conditions in connection therewith as will, in its opinion, assure that the use will conform to the foregoing requirements and that it will continue to do so."

Certain basic principles of law, applicable in the zoning field, must be considered in determining the question before us.

Zoning is a legislative power vested in the Commonwealth and delegated by it, in turn, to the various local governments for the enactment of local zoning ordinances. The constitutionality of such ordinances was once the cause of a great division of judicial opinion, but now their validity, when properly and reasonably drawn, is universally recognized.

Zoning ordinances must not be arbitrary and unreasonable, but if their reasonableness is fairly debatable, they must be sustained. Local governing bodies, with their knowledge of local conditions and the needs of their individual comunities, should be allowed wide discreation in the enactment and amendment of zoning ordinances, and a court should not substitute its judgment for that of the local legislative body, unless there has been a clear abuse of power. *West Brothers Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S. E. 881; *Board of Supervisors of Fairfax County* v. *Carper*, 200 Va. 653, 107 S. E. 2d 390.

The actions of a legislative body, in the enactment and amendment of zoning ordinances, are presumed to be valid, and unless they are invalid on their face, a heavy burden of proof rests upon those who would set such ordinances aside. *West Brothers Brick Co.* v. *Alexandria, supra; Cherrydale Cement Block Co.* v. *County Board*, 180 Va. 443, 23 S. E. 2d 158.

There is a presumption that public officials will discharge their duties honestly and in accordance with law, and will not arbitrarily exercise the discretion placed in their hands. If this discretion is improperly exercised, the courts provide necessary protection for the injured party by way of judicial review. *Ours Properties, Inc.* v. *Ley*, 198 Va. 848, 96 S. E. 2d 754.

The courts, in passing on zoning ordinances, have firmly established the rule that where such ordinances grant discretionary power for their administration, there must be provided standards for the guidance of the administering authority. The rule is founded on the principle that there must be a uniform application of the regulations, so that the discretion vested by the ordinance will not be used arbitrarily, and so that the benefits of the discretion will not be bestowed on some and denied to others under like circumstances. *Andrews* v. *Board of Supervisors of Loudoun County*, 200 Va. 637, 107 S. E. 2d 445; *City of Winchester* v. *Glover*, 199 Va. 70, 97 S. E. 2d 661.

We have, however, recognized a well-established exception to

the rule just stated. In the zoning field, this exception was laid down in the case of *Gorieb* v. *Fox*, 145 Va. 554, 134 S. E. 914, affirmed 274 U. S. 603, 47 S. Ct. 675, 71 L. ed. 1228. In the *Gorieb* case the City Council of Roanoke had adopted an ordinance providing for the establishment of building setback lines. The ordinance gave the council authority to grant or refuse permits for the erection of buildings closer to the street than was provided, "accordingly as their judgment will dictate whether the proposed buildings will subserve the general welfare of the neighborhood and city." Section 245 of the ordinance. In upholding this standard, this Court said:

"While the courts have held that, generally speaking, statutes and ordinances which vest arbitrary discretion in public officials, without prescribing a uniform rule of action by which they shall be guided are unconstitutional and void, this rule is subject to a qualification, 'where it is difficult or impracticable to lay down a definite rule, or where the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety and general welfare.'" (145 Va., at page 563).

This same exception to the general rule was also applied in the case of *Ours Properties, Inc.* v. *Ley, supra.*

█ With these precepts in mind, we come to an examination of the zoning ordinance of the City of Norfolk, and particularly of Section 18 of that ordinance.

A review of the zoning ordinance, the city plan, and the evidence presented in the lower court shows that the city, a thriving, growing and changing metropolis, has been divided into fourteen separate zoning districts made up of six residential districts, designated R-S through R-5; five commercial districts, designated C-O through C-4, and three manufacturing districts, designated M-1 through M-3. In many instances the residential districts are contiguous to commercial and manufacturing districts, or the districts are separated from one another only by the width of a street.

In the ordinance, the uses permitted in each district are set forth in detail. In each of the three types of districts —— residential, commercial and manufacturing —— certain uses are permitted only upon the securing of a use permit therefor, which is required either by the particular section of the ordinance where the use is listed, or by Section 18. In all, fifty-five separate uses, some of which are permitted in all districts, are listed as requiring use permits. These uses range from dentists' offices to explosives manufacture.

In the ordinance, regulations concerning height, area, setback and parking requirements vary from district to district. Some requirements are imposed upon certain uses that are not imposed upon others.

A study of each of the uses listed as requiring a use permit, as related to each district, shows that if such use were misplaced within a particular district, the public health, welfare, safety and morals might well be adversely affected by such location. Differences in size of the use, in scope of operation, in location in relation to other districts, in effect on value of adjoining or surrounding property, in impact on traffic, in effect on future growth of the area are among the matters that must be considered by the administering authority in determining whether or not to permit a proposed use.

These considerations apply to hiring halls to the same degree that they apply to any of the other uses requiring a use permit. They are matters that could not have been dealt with in advance in the enactment of the zoning ordinance and the formulation of the city plan. Action on each requested use permit requires the knowledge of local conditions and the skill gained by the administering authority through handling applications of a similar nature.

Section 18 is an integral part of the whole Norfolk ordinance. It cannot be read without reference to many of the other sections of the ordinance, and many of the other sections cannot be read without reference to Section 18.

It is an elementary rule of statutory construction that all relative provisions and sections of a legislative enactment must be considered and read together in construing one provision or section. *Board of Supervisors* v. *Cox*, 155 Va. 687, 156 S. E. 755.

From the whole ordinance, we find that the City Council of Norfolk has declared a legislative policy to be followed, has established primary standards for carrying out such policy, has prescribed a clear-cut principle to which it must conform with appropriate regard for the public interest, and has set out a clear and definite procedure to be followed in acting on applications for use permits. The ordinance makes it mandatory upon City Council to issue the requested use permit if the standards prescribed have been met. Under those circumstances, there has been provided sufficient protection against an arbitrary and uncontrolled exercise of discretion, and the challenge to the validity of the standards has, therefore, been met.

We are of the opinion that it would have been impracticable, if not altogether impossible, for the City Council of Norfolk to have provided a set of standards any more definite than those found in the ordinance under review. The case before us is, therefore, a proper one for the application of the principles laid down in *Gorieb* v. *Fox, supra,* to which we adhere.

Complainants urge that our decision in this case should be controlled by the conclusions reached in the cases of *City of Winchester* v. *Glover, supra,* and *Andrews* v. *Board of Supervisors of Loudoun County, supra.* A reading of these cases and of the ordinances then under review will disclose marked and material differences between the Winchester and Loudoun ordinances on the one hand and the Norfolk ordinance, now under consideration, on the other. We do not depart from the views expressed in the *Glover* and *Andrews* cases, but find them to be clearly distinguishable from the case before us.

For the reasons stated we find the zoning ordinance of the City of Norfolk to be valid and constitutional. The decree appealed from will, therefore, be

*Affirmed.*