## Richmond

### CITY OF NORFOLK

### v.

### TINY HOUSE, INC., T/A TINY HOUSE—MOM'S RESTAURANT, AND LILLIE A. JOHNSON

September 11, 1981.

Record No. 790686.

Present: All the Justices.

*Benjamin W. Bull, Assistant City Attorney (Phillip R. Trapani, City Attorney,* on briefs), for appellant.

*Frederick T. Stant, Jr.; Mary Keating (Clark & Stant,* P.C., on brief), for appellees.

HARRISON, J., delivered the opinion of the Court.

The City of Norfolk sought to enjoin Tiny House, Inc., and its president, Lillie A. Johnson, from selling alcoholic beverages for on-premises consumption until Tiny House had obtained the use permit required by Norfolk City Ordinance 28,759, adopted February 1, 1977 (hereinafter referred to as the Ordinance). The trial court held that the Ordinance infringed upon the exclusive authority delegated to the Alcoholic Beverage Control Commission and dismissed the City's bill of complaint. In this appeal we decide if the City, in the exercise of its police power, may enact a zoning ordinance regulating the location of an establishment selling alcoholic beverages.

Tiny House, a restaurant located in a C-2 district of Norfolk, desired to sell beer for on-premises consumption and on February 20, 1977, applied for the use permit required in the district by the Ordinance. The City Planning Commission, after a public hearing on March 18, 1977, recommended to the City Manager that the use permit be denied. On April 4, 1977, while City Council action on the recommendation was still pending, Tiny House withdrew its application. It has never been denied the use permit. Subsequently, on April 18, 1977, the ABC Commission, over the City's objection, issued the restaurant a license to serve beer for on-premises consumption. Tiny House then commenced selling beer without obtaining the City's use permit.

Norfolk filed a bill of complaint seeking injunctive relief, and Tiny House responded with an answer and cross-bill alleging, *inter alia*, that the Ordinance was null and void because the ABC Commission had "exclusive authority . . . to regulate or control the sale or use of alcoholic beverages." The trial court, after reviewing the statutes granting the ABC Commission its powers, found evidence of a legislative intent "to limit local authority" in matters pertaining the location and concentration of establishments selling alcoholic beverages.[1] Thereupon, the court held that the City was "outside the delegated authority granted it by the General Assembly" in enacting the zoning ordinance under attack because "such authority [was deposited] exclusively with the [ABC] Commission." It declared the Ordinance null and void "insofar as it regulates the location and concentration of establishments selling [alcoholic beverages]" and dismissed the City's bill of complaint. There was no ruling by the court on the cross-bill.

■ Code §§ 15.1-427 to -503.2 grant to municipalities the power to adopt zoning ordinances. Code § 15.1-427 states that "[t]his chapter is intended to encourage local governments to improve public health, safety, convenience and welfare of its citizens and to plan for the future development of communities to the end that . . . residential areas be provided with healthy surroundings for family life." The general purpose of zoning ordinances is the promotion of "health, safety or general welfare of the public and of further accomplishing the objectives of § 15.1-427." Code § 15.1-489. To accomplish these ends, ordinances are to be designed "to facilitate the creation of a convenient, attractive and harmoni-

---

[1] The court below placed special emphasis on 1934 Acts c. 94 § 65 (now Code § 4-96).

ous community." Code § 15.1-489(3). The General Assembly, in Code § 15.1-486, granted municipalities jurisdiction in each zoning district to regulate, restrict, permit, prohibit, and determine the following:

> (a) The use of land, buildings, structures and other premises for agricultural, business, industrial, residential . . . and other specific uses;
> (b) The size, height, area, bulk, location, erection, construction, reconstruction, alteration, repair, maintenance, razing, or removal of structures;
> (c) The areas and dimensions of land . . . to be occupied by buildings, structures and uses. . . .

■ The Ordinance defined several businesses as constituting "adult uses." It included as an adult use any establishment which had as a principal or accessory function the sale of alcoholic beverages for on-premises consumption and which required a retail on-premises license from the ABC Commission.[2] The City Council recognized "serious objectionable operational characteristics" inherent in adult uses, "particularly when several of them are concentrated . . . or located in direct proximity to residential neighborhoods," and enacted special regulations to prevent a concentration of adult uses that would create adverse effects on residential areas. Among the regulations provided by the Ordinance was the requirement that a use permit be obtained and that "no more than two such [adult] uses shall be located within 1,000 feet of each other." City Council was authorized to waive this requirement provided certain circumstances existed and certain stated findings were made.

Tiny House argues that it was "grandfathered" under the Ordinance or that its use constituted a nonconforming one and that it need not obtain a use permit. It points to amendments of the Ordinance and asserts that "the original version of Ordinance No. 28,759 did *not* accomplish the council's goal of requiring a use permit in a C-2 zone where the sale of alcohol is allowed as acces-

---

[2] Other adult uses defined were:
(1) Adult bookstores
(2) Adult motion picture theaters
(3) Adult mini-motion picture theaters
(4) Massage parlor/health parlors.

sory to a permitted use (restaurant)." While the language of the Ordinance in Sections 2:613.2(1)-(3) appeared to provide exemptions to the use permit requirement regarding establishments providing on-premises consumption of alcohol, subsection (4) of Section 2:613.2 provided no exception for these establishments. When read with the prefatory clause of Section 2:613.2 of the Ordinance, it is clear that subsection (4) thereof required a use permit for adult uses located within 1,000 feet of one another unless the requirement was waived by City Council, as provided in Section 2:613.2(5)(a-d).[3] Testimony at trial revealed that Tiny House was situated within 1,000 feet of other adult uses. It was therefore required to obtain the use permit.

There is "a presumption favoring the validity of municipal ordinances, and the presumption governs unless it is overcome by unreasonableness apparent on the face of the ordinance or by extrinsic evidence which clearly establishes the unreasonableness." *Kisley* v. *City of Falls Church*, 212 Va. 693,697, 187 S.E.2d 168, 171, *appeal dismissed*, 409 U.S. 907 (1972). "Whether a particular ordinance enacted pursuant to a general grant of power is void as arbitrary and unreasonable is a question of law for the courts." *Id.* The United States Supreme Court, in *Young* v. *American Mini Theatres, Inc.*, 427 U.S. 50 (1976), upheld the validity of a Detroit zoning ordinance prohibiting two regulated uses within 1,000 feet of one another. Those challenging the Detroit ordinance did so on the ground that the ordinance violated the First and Fourteenth Amendments to the United States Constitution. This contention was rejected by the Court. It said:

It is true, however, that adult films may only be exhibited commercially in licensed theaters. But that is also true of all motion pictures. The city's general zoning laws require all motion picture theaters to satisfy certain locational as well as other requirements; we have no doubt that the municipality may control the location of theaters as well as the location of other commercial establishments, either by confining them to certain specified commercial zones or by requiring that they be dispersed throughout the city. The mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing require-

---

[3] Appended to this opinion are pertinent extracts from City Ordinance 28,759.

ments is not a sufficient reason for invalidating these ordinances.

Putting to one side for the moment the fact that adult motion picture theaters must satisfy a locational restriction not applicable to other theaters, we are also persuaded that the 1,000-foot restriction does not, in itself, create an impermissible restraint on protected communication. The city's interest in planning and regulating the use of property for commercial purposes is clearly adequate to support that kind of restriction applicable to all theaters within the city limits.

427 U.S. at 62-63.

■ In the instant case, counsel for Tiny House acknowledged that the rights of Tiny House, allegedly infringed upon by the challenged Ordinance, are of lesser dignity than First Amendment rights. The effect of the holding in *Young* is that a municipality's police power, exerted through its zoning regulations, may be broad enough to limit First Amendment rights. If a locality's police power is that broad, then assuredly it can restrict rights of lesser dignity, such as those asserted by Tiny House. We hold that the City's Ordinance was a proper exercise of its police power and that the Ordinance is not arbitrary or unreasonable. Our position is aptly summarized in *Young*, where it was said:

The remaining question is whether the line drawn by these ordinances is justified by the city's interest in preserving the character of its neighborhoods. . . . The record discloses a factual basis for the Common Council's conclusion that this kind of restriction will have the desired effect. It is not our function to appraise the wisdom of its decision to require adult theaters to be separated rather than concentrated in the same areas. In either event, the city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect. Moreover, the city must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.

Since what is ultimately at stake is nothing more than a limitation on the place where adult films may be exhibited, even though the determination of whether a particular film fits that characterization turns on the nature of its content, we conclude that the city's interest in the present and future

character of its neighborhoods adequately supports its classification of motion pictures. [footnotes omitted.]

427 U.S. at 71-72.

Tiny House argues that even though the City's Ordinance may be a legitimate exercise of its police power, the City may not regulate the location and concentration of establishments selling alcoholic beverages. It submits that the General Assembly granted this exclusive authority to the ABC Commission. In support of its position, Tiny House cites numerous cases which stand for the proposition that when a city ordinance conflicts with a state statute, the state statute will prevail.[4] It then argues that "a reading of the Virginia Alcoholic Beverage Control Act in its entirety [demonstrates] that the state legislature intended to control the whole of the law . . . relating to and concerning alcohlic beverages." The City responds by citing numerous cases from other jurisdictions in which zoning legislation affecting the location of establishments selling alcoholic beverages was held valid.[5]

█ We agree that in conflicts between state law and municipal law, state law must control. We reject Tiny House's contention that the General Assembly, by enacting the ABC Act, intended to prohibit local governments from utilizing zoning as a means of controlling the location and concentration of establishments selling alcoholic beverages.

In *Maritime Union* v. *City of Norfolk*, 202 Va. 672, 119 S.E.2d 307 (1961), we held that Congress, through the National Labor Relations Act, had "not occupied and closed the field of labor relations affecting interstate commerce to the exclusion of the States' traditional authority to exercise their police power, provided the state action does not contravene the provisions of the Act." *Id.* at 677, 119 S.E.2d at 310. We said that for the Act to preempt state action "an intention of Congress to exclude the States from exerting their police power must be clearly manifested." *Id.* at 677, 119 S.E.2d at 311, citing *Maurer* v. *Hamilton,*

---

[4] *See Commonwealth* v. *Arlington County Bd.*, 217 Va. 558, 232 S.E.2d 30 (1977); *Byrum* v. *Orange County*, 217 Va. 37, 225 S.E.2d 369 (1976); *DeFebio* v. *County School Board*, 199 Va. 511, 100 S.E.2d 760 (1957); *City of Lynchburg* v. *Dominion Theatres*, 175 Va. 35, 7 S.E.2d 157 (1940).

[5] Among these cases are *Norwood* v. *Capps*, 278 Ala. 218, 177 So.2d 324 (1965); *Fulford* v. *Board of Zoning Adjustment*, 256 Ala. 336, 54 So.2d 580 (1951); *Saladino* v. *City of South Beloit*, 9 Ill. 2d 320, 137 N.E.2d 364 (1956); and *Louder* v. *Texas Liquor Control Bd.*, 214 S.W.2d 336 (Tex. Civ. App. 1948).

309 U.S. 598 (1940), and *Napier* v. *Atlantic Coast Line R.R.*, 272 U.S. 605 (1926). We then decided that Congress had not manifested such an intention, and that the City of Norfolk could exercise its police power by enacting an otherwise valid zoning ordinance requiring a use permit for the Maritime Union's hiring hall.

In *City of Richmond* v. *Southern Railway*, 203 Va. 220, 123 S.E.2d 641 (1962), it was argued that the State Corporation Commission had jurisdiction to determine the validity of a municipality's zoning regulations. Southern Railway was prevented from using certain lands it owned due to a Richmond City Zoning Ordinance. Southern contended that the Commission could decide the validity of the zoning ordinance because it was charged with the duty of supervising, regulating, and controlling the state's transportation companies in matters relating to the performance of their public duties. We disagreed, saying, "the vesting in the Commission of control over public utilities does not, without more, take from the local governments the powers conferred upon them by zoning statutes." *Id.* at 225, 123 S.E.2d at 645, citing *Wolf* v. *Village of Mt. Prospect*, 314 Ill. App. 23, 40 N.E.2d 778 (1942).

If this court adopted Tiny House's argument, we would be granting the ABC Commission the exclusive right to determine the location of establishments selling alcoholic beverages. Counsel for Tiny House conceded that if the ABC Act preempts local zoning ordinances regarding the location and concentration of this type establishment, then the ABC Commission could grant a license for such an establishment in a residential area and the local government would be powerless to prevent it.

We find no manifest intention on the part of the legislature to grant such sweeping and unbridled authority to the ABC Commission. There is no language in the ABC Act which takes from local governments the powers conferred upon them by zoning statutes to regulate land use. The General Assembly intended to grant the ABC Commission exclusive authority to control the "manufacture, bottling, possession, sale, distribution, handling, transportation, drinking, use, advertising or dispensing of alcoholic beverages in Virginia." Code § 4-96. It did not intend to usurp the police power of local governments or to prevent them from achieving the orderly use of land through zoning ordinances. When there is no conflict between the terms of the ABC Act and those of a municipal ordinance, the ordinance may stand. *Repass* v. *Town of*

*Richlands*, 163 Va. 1112, 178 S.E. 3 (1935). We hold that the ABC Commission's exclusive authority to license and regulate the sale and purchase of alcohlic beverages in Virginia does not preclude a municipality from utilizing valid zoning ordinances to regulate the location of an establishment selling such alcoholic beverages.

The instant case is unlike *Loudoun County* v. *Pumphrey*, 221 Va. 205, 269 S.E.2d 361 (1980), where the County Board of Supervisors adopted an ordinance requiring a minimum cash refund value of five cents on every nonrefillable beverage container. The ordinance provided that "beverage" included "beer and other malt beverages" as well as soft drinks. Beverage containers sold in Loudoun County were required to bear a label indicating that it was to be sold in the county and that the container could be returned for a refund. Because the ordinance regulated the bottling of alcoholic beverages contrary to Code § 4-96, and also required a deposit on bottles exempted under Regulation 32(d) of the ABC Commission, we held it invalid as inconsistent with state law. In *Loudoun County* there was a direct conflict between the local ordinance and state law. There is no such conflict in the instant case. The legislature has not granted localities the power to impose and collect deposits on beverage containers. Local governments have been granted the authority to adopt and enforce zoning ordinances to ensure the orderly use of land.

■ The ABC Commission is just what its name implies. It is a commission created by the General Assembly to "control" the merchandising of alcoholic beverages in this state. Code § 4-31 gives the ABC Commission the right to refuse to grant an ABC license if it has reasonable cause to believe that the granting of another license will be detrimental to the interest, morals, safety, or welfare of the public. In reaching this conclusion, the Commission is authorized to consider the character of, the population of, the number of similar licenses, and the total number of licenses in the particular locality or neighborhood. The Commission is to be concerned about the effect which a new license may have on real estate values and on the quietude and tranquility in the area where the business is to be located. However, the fact that the Commission, in granting a new license, may consider certain factors and their impact on the surrounding district, does not prevent a local legislative body from considering the same and additional factors in deciding whether to grant a use permit. The members of

a local legislative body are in the most advantageous position to determine the proper uses of land within their jurisdiction. Paraphrasing Mr. Justice Powell's statement in his concurring opinion in *Young*, 427 U.S. at 73, we "view the case as presenting an example of innovative land-use regulation" affecting the merchandising of alcoholic beverages "only incidentally and to a limited extent."

■ Norfolk seeks to protect an established residential community by preventing the clustering of adult uses nearby. The Ordinance under question is not a prohibition measure. It is not designed to prevent or control the use of alcohol or to regulate the business of those who dispense it. That is the exclusive province of the ABC Commission. The Ordinance seeks only to prevent the use of land in a manner the City has deemed detrimental to the general welfare of its inhabitants and deemed as having a deleterious effect on the community. The General Assembly has vested the authority in the City's legislative body to take this action.

In *Loudoun County*, 221 Va. at 207, 269 S.E.2d at 362, we said: "If both the statute and ordinance can stand together, courts are obliged to harmonize them, rather than nullifying the ordinance." We find no conflict between any provision in the Acts of the General Assembly regulating alcoholic beverages and the Ordinance of the City of Norfolk enacted pursuant to Acts of the General Assembly concerning municipal zoning.

We have considered and find no merit in appellees' assignments of cross-error.

For the reasons set forth, the judgment of the court below is reversed, and final judgment will be entered here on behalf of the City of Norfolk.

*Reversed and final judgment.*[6]

---

[6] Although the issue in this case was a narrow one, appellant and appellees filed a joint appendix consisting of over 570 pages. Some of the material included in the appendix was already available to the members of this court, and much was unnecessary and immaterial. Because we find the record was unduly encumbered, we will tax the costs of this case equally against appellant and appellees. Rule 5:38.

## APPENDIX

AN ORDINANCE TO AMEND THE ZONING ORDI-
NANCE OF THE CITY OF NORFOLK, 1968, AS
AMENDED, SO AS TO ADD NEW USES KNOWN AS
ADULT BOOK STORE, ADULT MOTION PICTURE
THEATER, ADULT MINI MOTION PICTURE THEA-
TER, MASSAGE PARLOR-HEALTH PARLOR, AND ES-
TABLISHMENT FOR THE SALE OF BEER, WINE AND/
OR MIXED BEVERAGES FOR ON-PREMISES CON-
SUMPTION, TO DEFINE SUCH USES AND TO PRO-
VIDE REGULATIONS SO AS TO PERMIT SUCH USES
ONLY BY USE PERMIT IN CERTAIN ZONING DIS-
TRICTS, TO PROHIBIT SUCH USES IN OTHER DIS-
TRICTS, TO REQUIRE THAT ANY USE HAVING AN
ON-PREMISE LICENSE FROM THE VIRGINIA ALCO-
HOLIC BEVERAGE CONTROL COMMISSION SHALL
BE PERMISSIBLE ONLY BY USE PERMITS AND TO
PROVIDE FOR CITY COUNCIL TO GRANT WAIVERS
UNDER CERTAIN CONDITIONS.

- - -

BE IT ORDAINED by the Council of the City of Norfolk:

Section 1:- That the Zoning Ordinance of the City of Norfolk, 1968, as amended, is hereby amended by adding five new sections thereto defining adult uses which sections are numbered and read as follows:

***

1102.1.5. ESTABLISHMENT FOR THE SALE OF BEER, WINE, AND/OR MIXED BEVERAGES FOR ON-PREMISES CONSUMPTION: Any establishment having as a principal or accessory function the sale of beer, wine, and/or mixed beverages for consumption on the premises and requiring a retail on-premises license from the Virginia Alcoholic Beverage Control Commission.

Section 2:- That the Zoning Ordinance of the City of Norfolk, 1968, as amended, is hereby amended by adding five new sections thereto relating to use permits for adult uses which sections are numbered and read as follows:

### 613. *Adult Uses*
### 613.1 *Intent*

Within the city, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances or located in direct proximity to residential neighborhoods, thereby having a deleterious effect upon the adjacent areas. Special regulations of these areas is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. These special regulations are itemized in this section. The primary control or regulation is for the purpose of preventing the concentration or location of these uses in a manner that would create such adverse effects.

Uses subject to these controls are as follows

1. Adult Book Store
2. Adult Motion Picture Theater
3. Adult Mini Motion Picture Theater
4. Massage parlor/health parlor
5. Establishment for the sale of beer, wine, and/or mixed beverages for on-premises consumption.

### 613.2 *Location and Extent*

Use permits in this class shall involve only property in the C-2, C-3, C-4, C-4A, M-1, M-2 and M-3 districts; provided that:
1. Establishments for the sale of beer, wine, and/or mixed beverages for on-premises consumption may also be located in the SP1-1, SP1-2, SP1-3, SP1-4, CR-1, and CR-L districts, and are permissible in other districts only as accessory to a use otherwise permitted or permissible in the district.
2. Except as in (5) below, and except as to establishments for the sale of beer, wine, and/or mixed beverages for on-premises consumption as accessory to a use otherwise permitted or permissible in a district, no such permit shall authorize such use or structure less than 500 feet from any residential district boundary.

3. Except as in (5) below, and except as to establishments for the sale of beer, wine and/or mixed beverages for on-premises consumption as accessory to a use otherwise permitted or permissible in a district, all off-street parking spaces serving such uses shall be located at least 300 feet from the nearest residential district boundary.

4. Except as in (5) below, no more than two such uses shall be located within 1000 feet of each other.

5. City Council may waive the locational provisions in (2), (3) and (4) above under certain circumstances if the following findings are made:

(a) that the proposed use will not be contrary to the public interest or be injurious to nearby properties, and that the spirit and intent of this ordinance will be observed;

(b) that the establishment of an additional adult use in the area will not conflict with any Council adopted objectives, plans, or programs for the area;

(c) that the establishment of an additional adult use will not be contrary or detrimental to any program of neighborhood conservation or renewal in adjacent residential areas; and

(d) that all applicable regulations of the ordinance and by special conditions attached to the use permit will be observed.