Richard and Frieda ULLIS

v.

INHABITANTS OF the TOWN OF BOOTHBAY HARBOR and eleven other cases.

Supreme Judicial Court of Maine.

Argued March 10, 1983.

Decided April 13, 1983.

Thomas A. Berry (orally), Boothbay Harbor, for plaintiff.

Bernstein, Shur, Sawyer & Nelson, Geoffrey H. Hole (orally), Portland, for Inhabitants of Town of Boothbay Harbor and Licensing Bd. of the Town of Boothbay Harbor.

Peter J. Brann (orally), Clifford B. Olson, Phillip M. Kilmister, Augusta, for Maine State Liquor Com'n, et al.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ.

McKUSICK, Chief Justice.

The Town of Boothbay Harbor appeals from the adverse judgment of the Superior Court (Lincoln County) in twelve separate actions consolidated below for hearing and now on appeal. At issue in each case was the validity or proper application of the Town's victualer's ordinance, which requires all restaurants serving alcoholic beverages to obtain a "Class H" license from the Town licensing board, and which prohibits the issuance of a Class H victualer's license to any establishment within 1200 feet of a preexisting Class H licensee.[1] The Superior Court held that section 8.3 of the ordinance—the 1200-foot provision—cannot be used to deny victualer's license applications because it conflicts with the statewide liquor licensing scheme enacted by the legislature, and that it cannot "operate as a vehicle by which a municipality may impose further restrictions on the issuance of [state] liquor licenses." In order to deal with these cases coherently on appeal, we divide them into five categories. Cases in the first three categories must be disposed of on procedural grounds. Cases in categories four and five squarely present the question whether section 8.3 of the Boothbay Harbor's victualer's ordinance may be used to deny restaurateurs' applications for state liquor licenses and local Class H victualers' licenses, respectively. We hold that it may not be so used, and affirm the decision of the Superior Court in those cases.

I. *Lack of Standing*

 In case No. CV–81–72, we must vacate the judgment of the Superior Court and remand with directions to dismiss. The plaintiff in the Superior Court was the Town of Boothbay Harbor, which sought review of a decision of the State Liquor Commission pursuant to 5 M.R.S.A. § 11001(1) (Supp. 1982–1983) and M.R. Civ.P. 80B. The State Liquor Commission had denied Richard and Frieda Ullis, proprietors of the Harbor Deli in downtown Boothbay Harbor, a state liquor license, thereby affirming a preliminary liquor license denial by the Town's selectmen.[2] The com-

---

1. Boothbay Harbor's victualer's ordinance requires, in section 2.1, that "[a]ny place where food or drink is prepared or served to the public as a profit-making venture" obtain annually a victualer's license "in order to operate within or from the Town of Boothbay Harbor." Section 6.1 defines the different classes of licenses, including Class H, required of "a facility serving at least one cooked meal per day which is also licensed to serve malt, vinous, or spiritous liquors." Classes A through G cover facilities serving food but no alcoholic beverages. In order to obtain a victualer's license of any class, an establishment must have passed an inspection, certified that it is not in violation of any local, state, or federal law and is not behind in property tax payments, and met various sanitation requirements. Section 8.3 of the ordinance, applicable only to establishments requesting Class H licenses, states:

> An establishment which serves liquor along with its meals contributes more heavily to parking problems due to the length of time

its patrons spend in said establishment. Furthermore, the close proximity of liquor serving establishments in Boothbay Harbor has caused unnecessary noise and public disturbances as patrons travel from one such establishment to the next. In addition, the residents of Boothbay Harbor are opposed to any more liquor serving establishments in downtown Boothbay Harbor, out of concern for their own safety and personal well-being as well as that of their children.

Consequently, no further Class H licenses shall be granted in Boothbay Harbor beyond the ones which exist at the adoption date of this Ordinance, unless the establishment requesting said license is at least 1200 feet distant from any other Class H licensee.

2. 28 M.R.S.A. § 252 (1974), which was in effect when the Ullises applied in 1981 for their liquor license, gave the "municipal officers" of a town the duty to consider, in the first instance, all such applications. An applicant "aggrieved" by the municipal officers' refusal to issue a

mission's holding rested on its determination that the Ullises' restaurant was within 300 feet of a nearby church and therefore ineligible for a liquor license under 28 M.R.S.A. § 301 (1974)[3]—an issue never addressed by the selectmen. The commission's opinion also stated—in a dictum—that the selectmen had erred when they denied the Ullises' liquor license application on the sole ground that their restaurant was ineligible for a local Class H victualer's license. The Town objected to this dictum and asked the Superior Court to "overturn" it.

Because the commission affirmed the Town's denial of the Ullises' liquor license application (albeit for reasons different from the selectmen's), the Town was not "aggrieved" by the commission decision and had no standing to challenge it in the courts. Only aggrieved parties may appeal agency action to the Superior Court. 5 M.R.S.A. § 11001(1). Thus, we must remand to the Superior Court for entry of an order dismissing the Town's petition for review. *See Singal v. City of Bangor,* 440 A.2d 1048, 1050 (Me.1982).

### II. *Lack of a Public Hearing*

Cases No. CV–82–23, CV–82–68, CV–82–73, and CV–82–80 must be sent back to the State Liquor Commission for public hearings. In each of these cases, a Boothbay Harbor restaurant owner applied to the Town selectmen for a state liquor license.[4] In each case the selectmen refused to issue a license on the ground that the applicant was ineligible for a local Class H victualer's license. In each case the applicant appealed to the State Liquor Commission pursuant to

28 M.R.S.A. § 252–A(3) (Supp.1982–1983), which states, "Any applicant aggrieved by the decision of the municipal officers ... may appeal to the commission, who *shall* hold a public hearing in the ... town ... where the premises are located." (Emphasis added) In view of the fact that several 1981 cases raising the same issue were already pending in Superior Court, the commission, the applicants, and the Town agreed in these 1982 cases to dispense with a public hearing before the commission, stipulating that the selectmen's decision was based solely on section 8.3 of the Town's ordinance. The commission reversed the selectmen in each case and issued the liquor licenses. It held that an applicant's ineligibility for a Class H license under section 8.3 of the Town's victualer's ordinance could not justify the selectmen's denial of a state liquor license. The Town appealed to the Superior Court, which upheld the commission, and then to the Law Court.

■ Because section 252–A(3) was not complied with in these cases, we remand to the Superior Court for the entry of orders remanding them to the commission for public hearings. Section 252–A(3), although it speaks of an "appeal" to the commission, clearly *requires* the commission to do more than merely review for legal sufficiency the reasons given by the municipal officers for their decision. The requirement that the State Liquor Commission hold a *public* hearing militates strongly against a construction that the "appeal" from the municipal officers' denial is on questions of law

---

license could appeal to the Maine State Liquor Commission, which under certain conditions could reverse the municipal officers and issue the license.

**3.** Section 301 forbids the issuance of restaurant liquor licenses to "new premises within 300 feet of a ... church, chapel or parish house in existence as such at the time the new license is applied for ...," unless the applicant secures "the unanimous approval of the members of the commission and the written approval of a majority of the officers or the written approval of the officer, person or pastor in charge of

such church, chapel [or] parish house." The United States Supreme Court's recent decision in *Larkin v. Grendel's Den, Inc.,* —— U.S. ——, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982), has cast some doubt on the validity of section 301.

**4.** The applicants were: No. CV–82–23, Lloyd Cuttler, owner of Gepetto's II restaurant; No. CV–82–68, Peter and Joan McKenney, operators of the Carousel Music Theatre; No. CV–82–73, Sally Maroon, owner of the Chowder House restaurant, applying for a full-time liquor license; No. CV–82–80, Sally Maroon, applying for a part-time license.

only. Furthermore, section 252–A(3)(B) states:

> If the decision appealed from was to deny the application or request, the commission may grant the application or request only if it finds by clear and convincing evidence that the decision was without justifiable cause.

We read this provision as requiring the commission to uphold the municipal officers' denial of a license application whenever that denial in fact was proper under title 28—even if the reasons stated by the officers in their decision would not support the denial.[5] Finally, the commission is given no power under section 252–A(3)(B) to remand a case to the municipal officers; it must either "affirm" the officers' denial or grant the application itself. These factors convince us that the commission is required, on "appeal," to conduct essentially a *de novo* hearing on the liquor license application (with appropriate deference paid, of course, to any factual findings actually made by the municipal officers). The commission may take new evidence from the public on any issue relevant to the grant or denial of a license application under title 28. This being so, members of the public retain an interest in the case on "appeal" beyond the usual public interest in knowing the doings of a state agency.[6] Their interest, and *their* right to be heard, may not be sacrificed for the stipulated convenience of the named "parties" before the commission. It is an obvious principle of law and of common sense that parties may not by stipulation affect the rights of any who have not joined in the stipulation. *See* 73 Am.Jur.2d *Stipulations* § 9 (1974). The applicant and the

municipal officers cannot waive the statutorily mandated public hearing before the commission any more than they could waive the public hearing required by section 252–A(1) to be held before the municipal officers in the first instance. Nor can the commission, by joining in a stipulation with the named parties before it, avoid its statutory responsibility to hear any member of the public who comes forward at the required public hearing with evidence tending to prove alternative reasons for denying the license application.

█ Since the license applicants, the Town, and the commission all joined in the stipulation to dispense with the public hearing before the commission, they naturally have made no issue of this deficiency in their appellate arguments before either the Superior Court or the Law Court. The failure of the regulatory agency to carry out its statutory responsibility is, however, evident on the face of this record. In such circumstances, this court must, on its own initiative, remand for the commission to hold the public hearings required by section 252–A(3). *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 111, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) ("When necessary, however, a court of appeals should, on its own initiative, take steps to protect the absent party who of course had no opportunity to plead and prove his interest below.").

### III. *Lack of Agency Action*

█ Case No. CV–82–72 must be remanded to the Superior Court with directions to dismiss. Richard and Frieda Ullis initiated the case by filing in the Su-

---

5. For example, in case No. CV–81–72 the State Liquor Commission, after public hearing, on an appeal from the Town's denial of a liquor license, also denied the license, but on a ground different from that relied upon by the Town. See part I of this opinion.

6. In the 1981 rewriting of former 28 M.R.S.A. § 252 (1974) into the present section 252–A, the legislature omitted the former provision requiring the State Liquor Commission to "give adequate public notice of the time and place" of the public hearing on an appeal from the

municipal officers' denial of a liquor license. See P.L.1981, ch. 366, § 5. This omission, however, does not indicate that the commission no longer need notify the public of liquor license hearings; by 1981, the Administrative Procedure Act contained a generally applicable requirement that public notice be given in any proceeding "involv[ing] the determination of issues of substantial public interest." 5 M.R. S.A. § 9052(2)(B) (1979), enacted by P.L.1977, ch. 551, § 3.

perior Court a petition for review of final agency action. Their petition alleged that they applied to the Town selectmen for a state liquor license in 1982 and that "the parties have stipulated to the same results in this application as in the 1981 application." [7] There is no evidence in the record that either the selectmen or the State Liquor Commission actually issued a decision in this case. In fact, it appears that the Ullises' 1982 liquor license application was neither approved nor denied by the commission. There was therefore no "final agency action" or "decision of the State Liquor Commission" to appeal from under 5 M.R.S.A. § 11001(1) and 28 M.R.S.A. § 252–A(5), respectively. Nor was there a "failure or refusal of an agency to act," made reviewable by 5 M.R.S.A. § 11001(2) (1979), as neither the Town nor the Ullises requested a decision from the commission. Our civil rules reflect the statutory requirement that appeals may be taken only from actual decisions of an administrative agency. M.R.Civ.P. 80B(e) states that parties before the Superior Court may submit "stipulations" "[i]n lieu of an actual record"; "however, the full decision and findings of fact appealed from shall be included." Thus, although parties may, in an administrative appeal, stipulate to relevant facts in the context of an actual case, they may not stipulate, contrary to fact, to the existence of the administrative decision of which review is sought. *See Rush v. Aroostook County,* 447 A.2d 478, 479 n. 2 (Me.1982).

### IV. *The Liquor Licenses*

■ Case No. CV–81–71 presents the question whether the selectmen of the Town of Boothbay Harbor may justifiably deny a state liquor license to an otherwise eligible applicant on the sole ground that the applicant is ineligible for a local victualer's license under section 8.3 of the Town's victualer's ordinance. We hold that municipal officials do not have any authority to condition the granting of state liquor licenses on factors other than those specified in title 28 of the Maine Revised Statutes (1974 & Supp.1982–1983) or imposed by the municipality pursuant to a specific grant of power spelled out in title 28.

28 M.R.S.A. § 252–A(1) gives municipal officers the duty of initially considering liquor license applications, as did former section 252, which was in effect in 1981 when Sally Maroon applied to Boothbay Harbor's selectmen in this case. Neither former section 252 nor current section 252–A specifies the standards to be used by the municipal officers in granting or denying such applications. A broader reading of the entire statutory scheme regulating liquor licenses in the state of Maine, however, yields the conclusion that, except in certain situations addressed by specific statutory provisions, the legislature did not intend municipal officials to impose additional local requirements on top of the statewide requirements set by the legislature and the State Liquor Commission for all license applicants.

28 M.R.S.A. § 201 sets forth general eligibility requirements for all liquor license applicants. Sections 301 and 304 contain additional statewide restrictions, and current section 53(3) (echoing former section 55(8)) gives the State Liquor Commission the power "to adopt rules, requirements and regulations ... the observance of which shall be conditions precedent to the granting of any license to sell liquor ...." Sections 101–103 of title 28 allow a municipality, by referendum, to prohibit entirely the issuance of certain classes of liquor licenses within its borders. And section 702 allows a municipality, by ordinance, to impose local requirements in addition to the statewide requirements on applicants for "amusement permits" (required for premises on which there is entertainment as well as liquor sales).

---

7. Case No. CV–81–72, also initiated by the Ullises, involved a liquor license application made by them in 1981. In that case the selectmen denied their application for one reason and the State Liquor Commission affirmed the denial on a different ground. See part I of this opinion.

Nowhere are municipalities granted any general powers to impose restrictions upon license applicants above and beyond those specified by the legislature or the State Liquor Commission; in fact, sections 101–103 and 702 stand as compelling evidence that the legislature did not intend local authorities to exercise such general powers, but merely to apply those license criteria specified in title 28. *See Labbe v. Nissen Corp.,* 404 A.2d 564, 567 (Me.1979) (whenever possible, courts will construe a legislative scheme so as to render no portion of it useless or unnecessary). An applicant's eligibility or ineligibility for a local victualer's license can have no bearing on a municipality's decision, under 28 M.R.S.A. § 252, to grant or deny a state liquor license. Conditioning the grant of a liquor license on a criterion not contemplated by the liquor licensing statutes was "without justifiable cause." The liquor commission therefore was correct to overturn the local decision and grant the license under 28 M.R.S.A. § 252 (1974), which allowed the commission, as does current section 252-A(3), to issue a license upon a finding that the refusal below was without justifiable cause.

## V. *The Victualer's Licenses*

■ Cases No. CV–81–27, CV–81–49, CV–81–124, CV–82–56, and CV–82–58 present the question whether the Town of Boothbay Harbor may deny a Class H victualer's license to an otherwise eligible applicant under section 8.3 of its victualer's ordinance. In each of these cases, a restaurant owner applied to the Town's licensing board for a Class H license for authority to serve alcoholic beverages along with prepared food.[8] In each case the board denied the application on the ground that the applicant's restaurant was within 1200 feet of a preexisting Class H licensee. Each of the applicants sought judicial review in the Superior Court, which held that section 8.3 of the ordinance is "invalid and unenforceable." We agree.

A municipality in Maine may exercise "any power or function which the legislature has power to confer upon it, which is not denied either expressly or by clear implication." 30 M.R.S.A. § 1917 (1978). By enacting the comprehensive, statewide liquor licensing scheme discussed in part IV above, the legislature by clear implication has denied to municipalities the right to legislate in the area of liquor sales. The same factors that convinced us that municipalities may not deny state liquor licenses to persons eligible under title 28 also lead us to conclude that municipalities may not enact and enforce ordinances directly conflicting with title 28.

A close examination of section 8.3 of the challenged ordinance reveals that it quite precisely works at cross purposes to the state's liquor licensing statutes, and therefore impermissibly conflicts with them. Although the section does not on its face prevent anyone from obtaining a liquor license, its effect is the same as if it did. Other portions of the victualer's ordinance—such as the sanitation provision— may have the incidental effect of prohibiting a restaurateur from serving liquor even though he possesses a valid liquor license, but section 8.3 applies only to restaurateurs whose establishments serve alcoholic beverages. In *Schwanda v. Bonney,* 418 A.2d 163, 167 (Me.1980), we held that, because the state had preempted the field of concealed-weapons licensing, a municipality could not "impose[ ] licensing criteria beyond the statutory requirements." Section 8.3, though drafted as part of a victualer's ordinance, operates exactly as though it expressly denied liquor licenses to restaurateurs who were otherwise fully eligible but whose establishments were located within 1200 feet of a preexisting restaurant serving alcoholic beverages. Its design and intent is thus not to regulate the sale of prepared food, which Boothbay Harbor is

---

**8.** The applicants were: No. CV–81–27, Richard and Frieda Ullis (1981 application); No. CV–81–49, Sally Maroon; No. CV–81–124, Lloyd Cuttler (1981 application); No. CV–82–56, Richard and Frieda Ullis (1982 application); No. CV–82–58, Lloyd Cuttler (1982 application).

free to do,[9] but to regulate the sale of liquor, which is exactly what Boothbay Harbor may not do.

*Norfolk v. Tiny House, Inc.,* 222 Va. 414, 281 S.E.2d 836 (1981), lucidly illustrates the distinction between a valid ordinance that happens to affect liquor sales and an invalid ordinance that impermissibly conflicts with a state scheme intended to preempt the field. In that case, the Virginia court upheld a local zoning ordinance that, because it prohibited all "adult uses" (including taverns) in certain areas of the city, prevented Tiny House, Inc., from selling beer even though it had a valid state liquor license. The court concluded that since the ordinance was *not* designed "to prevent or control the use of alcohol or to regulate the business of those who dispense it," 222 Va. at 424, 281 S.E.2d at 842, but only indirectly affected Tiny House's ability to sell beer, it did not conflict with Virginia's statewide liquor licensing structure. Section 8.3 of Boothbay Harbor's ordinance, on the other hand, presents a direct challenge to title 28.

■ Where the state legislature has preempted a field, a municipality may not invade that field in the guise of regulating a field still open to that municipality. *See Township of Spring v. Majestic Copper Corp.,* 435 Pa. 271, 256 A.2d 859 (1969) (striking down a "zoning" ordinance prohibiting liquor sales though allowing other restaurant operations in "recreational use" zone); *7–Eleven, Inc. v. McClain,* 422 P.2d 455 (Okl.1967) (striking down a local ordinance prohibiting the sale of 3.2 beer within 300 feet of a church in "business" zone). The Superior Court correctly perceived that section 8.3 of Boothbay Harbor's victualer's ordinance violates this canon.

The entries are:

I. In case No. CV–81–72: Judgment of the Superior Court vacated. Remanded to the Superior Court for entry of an order dismissing the Town's petition for review.

II. In cases No. CV–82–23, CV–82–68, CV–82–73, and CV–82–80: Judgment of the Superior Court vacated. Remanded to the Superior Court for entry of an order remanding to the State Liquor Commission for a public hearing in accordance with 28 M.R.S.A. § 252–A(3) and for further proceedings consistent with the opinion herein.

III. In case No. CV–82–72: Judgment of the Superior Court vacated. Remanded to the Superior Court for entry of an order dismissing the Ullises' petition for review.

IV. In case No. CV–81–71: Judgment of the Superior Court affirmed.

V. In cases No. CV–81–27, CV–81–49, CV–81–124, CV–82–56, and CV–82–58: Judgment of the Superior Court affirmed.

All concurring.

---

**9.** 30 M.R.S.A. § 2752 (1978) specifically directs municipalities to regulate and license "victual-ers and innkeepers."