Martin CROSBY d/b/a Poor Richard's Pub

v.

INHABITANTS OF the TOWN OF OGUNQUIT.

52 MAIN STREET, INC. d/b/a The Club, Jon J. Revere, Old Acquaintance, Inc. d/b/a The Front Porch

v.

INHABITANTS OF the TOWN OF OGUNQUIT, et al.

Supreme Judicial Court of Maine.

Argued Sept. 6, 1983.

Decided Dec. 19, 1983.

---

John R. Kugler (orally), Daughan & Kugler, Wells, for Martin Crosby d/b/a Poor Richard's Pub.

Sheila J. Fine (orally), Fine & Cohen, P.A., Ogunquit, Professor Merle Loper (orally), University of Maine School of Law, Portland, for 52 Main Street, Inc., et al.

E. Stephen Murray (orally), John C. Bannon, Murray, Plumb & Murray, Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

WATHEN, Justice.

In this consolidated action seeking declaratory relief, plaintiffs Martin Crosby, 52 Main Street, Inc., Jon J. Revere, and Old Acquaintance, Inc. appeal from summary judgments granted by the Superior Court (York County) upholding Ogunquit's Special Amusement Ordinance. The plaintiffs challenge the ordinance on the following grounds: that it was not properly enacted; that it is an improper exercise of police power which violates due process under the Fifth and Fourteenth Amendments to the United States Constitution; that it violates the First Amendment of the United States Constitution and Article I, section 4 of the Maine Constitution; and, that the bond imposed by the ordinance constitutes an invalid tax. We hold that sections 301.3 and 302.2 of the ordinance are not proper exercises of police power and that the bonding requirement set forth in section 303.5 exceeds the statutory powers of the town. We sustain the appeal.

Plaintiffs operate, in the town of Ogunquit, restaurants and lounges which are licensed to serve liquor. All of the establishments offer amplified music as part of the entertainment made available to their patrons.

On December 28, 1982 at a special town meeting the voters of the town enacted a Special Amusement Ordinance applicable only to liquor licensees. Section 302.2 of

the ordinance limits the issuance of amusement permits as follows:

> No Special Amusement permit shall be issued except for indoor dancing by patrons and indoor live music and outdoor one-time single events featuring dancing by patrons and live music.

Section 301.3 defines "live music" as:

> Live music shall mean music produced or created by voice or musical instrument on a licensee's premises and transmitted without the aid of amplification or electronic devices or instruments.

In addition, section 303.5 requires applicants for an amusement permit to post a bond in the amount of $10,000 naming the town of Ogunquit as the beneficiary. A violation of the ordinance is declared to be an offense subjecting the licensee to a fine and loss of amusement license.

In granting summary judgment for the town, the Superior Court ruled that the ordinance had been duly enacted and was free from constitutional infirmity. From that ruling the plaintiffs appeal.

### I.

■ Initially, plaintiffs contend that in enacting the ordinance the town failed to comply with 30 M.R.S.A. § 2153(3) (1978 and Supp.1982–1983) which provides as follows:

> A municipality may enact ordinances by the following procedure.
>
> .    .    .    .    .
>
> 3. Question. The subject matter of the proposed ordinance shall be reduced to the question: "Shall an ordinance entitled '     ' be enacted?", and shall be submitted to the town meeting for action either as an article in the warrant or a question on a secret ballot.

On November 16, 1982 the selectmen of Ogunquit accepted a citizens' petition for enactment of the Special Amusement Ordinance. The selectmen prepared a warrant

for a special town meeting to be held on December 28, 1982. Article 6 of the warrant purported to give notice that enactment of the Special Amusement Ordinance would be voted on at that meeting. An earlier version of the ordinance had been enacted in 1980, and was repealed on June 8, 1982. Article 6 mistakenly referred to the proposed enactment as repealing and revising that earlier ordinance.[1] Prior to the scheduled town meeting, in apparent recognition of the erroneous reference to repeal and revision of the earlier ordinance, an additional article was added to the warrant. That article confirmed that the prior ordinance had been repealed and that the proposed ordinance would "revive" portions of that earlier version.

Plaintiffs argue that section 2153(3) requires that notice be given in one article rather than two. Plaintiffs further argue that neither article includes the language specified in section 2153(3): " 'Shall an ordinance entitled "     " be enacted?' " The statute, however, does not explicitly condition the validity of an ordinance on precise compliance with the statutory enactment procedure. In the absence of such an explicit provision, substantial compliance is sufficient. See, e.g., McQuillin, Municipal Corporations, § 16.10 (3rd ed.).

The notice afforded by a warrant is designed to facilitate meaningful debate and informed voting. Articles 6 and 7 together provided adequate notice to the inhabitants of Ogunquit and substantially complied with the requirements of section 2153(3). The failure to include the form language of the statute and the statement of the proposed ordinance in two articles do not invalidate the enactment of the ordinance.

### II.

Plaintiffs next challenge the ordinance as an improper exercise of police power in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The extent to which municipalities

---

1. The article read as follows:

   Shall Sections 301 to 304.4 of an Ordinance entitled "Special Amusement Ordinance" be repealed and revised. A copy of said "Spe-

   cial Amusement Ordinance" being annexed hereto as EXHIBIT 1 and made a part hereof by reference.

may exercise the general police power of the State requires careful analysis. In interpreting the liquor licensing laws, we recently held that the State has delegated only certain enumerated licensing powers to the municipalities, retaining all residuary powers. *Ullis v. Inhabitants of the Town of Boothbay Harbor,* 459 A.2d 153, 158–60 (Me. 1983). In the present context we need not determine whether the State has retained all residuary powers and has delegated only limited powers to the municipalities with respect to regulating entertainment in establishments selling liquor.[2] We assume for purposes of this appeal that the municipality exercised general police powers,[3] rather than limited statutory powers, in enacting section 302.2 of the ordinance. Nevertheless, we are compelled to conclude that the municipality has not exercised those powers consistently with the requirements of due process.

We begin our analysis with the presumption that the ordinance is constitutional. The plaintiffs, in challenging the ordinance, have the burden of establishing its invalidity. In *State v. Rush,* 324 A.2d 748 (Me. 1974), this Court articulated the following three steps to be employed in determining whether the police power has been exercised in accordance with the requirements of due process:

1. The *object* of the exercise must be to provide for the public welfare.
2. The legislative *means* employed must be appropriate to the achievement of the ends sought.
3. The *manner of exercising* the power must not be ... arbitrary or capricious.

*Id.* at 753 (emphasis in original).

Ogunquit's Special Amusement Ordinance prohibits *all* forms of indoor enter-

---

**2.** The original version of 28 M.R.S.A. § 702 (Supp.1982–1983), was enacted in 1937 and prohibited most forms of entertainment in liquor-licensed establishments unless the licensee first obtained an amusement permit from the State Liquor Commission. The statute provided, however, that "[t]he commission shall not issue such permits unless the applicants shall have first obtained the approval of the municipal officers of the municipality in which his licensed premises are situated." P.L.1937, ch. 235, § 3. Subsequent amendments enacted between 1937 and 1977 did not alter the requirement that the commission issue the permits subject to initial approval by the municipal officers.

In 1977 the statute was repealed and replaced by the current version of section 702 (as amended in 1979), which continues to prohibit most forms of entertainment in liquor-licensed establishments. The licensing function, however, is delegated exclusively to the municipality. In so far as relevant 28 M.R.S.A. § 702 provides as follows:

*1. Permit required.* No licensee for the sale of liquor to be consumed on his licensed premises shall permit, on his licensed premises, any music, except radio or other mechanical device, any dancing or entertainment of any sort unless the licensee shall have first obtained from the municipality in which the licensed premises are situated a special amusement permit. ... The municipal officers shall grant a permit unless they find that issue of the permit would be detrimental to the public health, safety or welfare, or would

violate municipal ordinances or rules and regulations. A permit shall be valid only for the license year of the existing license.

. . . .

*3. Municipal ordinances or rules and regulations.* A municipality shall adopt ordinances or authorize the municipal officers to establish written rules and regulations, governing the issuing, suspension and revocation of these permits, the classes of permits and fees for the issuance of these permits, the music, dancing or entertainment permitted under each class, and other limitations on these activities required to protect the public health, safety and welfare. ...

**3.** The Twenty-first Amendment to the United States Constitution does not grant the municipalities additional powers to regulate in regard to amusement permits for liquor-licensed establishments. If it applies at all, it confers on the State the authority to regulate. U.S. Const. Amend. XXI, § 2. If we were to conclude that the Twenty-first Amendment is the source of the State's power to regulate entertainment in liquor-licensed establishments, the rationale of *Ullis* would apply and the town of Ogunquit would have only the statutory powers delegated by 28 M.R.S.A. § 702(3). ("A municipality shall adopt ordinances ... *required* to protect the public health, safety and welfare.") (emphasis added). An analysis identical to that undertaken herein would be required and the result would remain unchanged if the validity of the ordinance was tested as an exercise of statutory powers.

tainment except indoor live music and dancing by patrons. The permitted forms of entertainment are further narrowed by the definition of "live music" which excludes all amplified or electronically generated music produced by voice or musical instrument.

■ The first step in the analysis set forth in *Rush* requires that the object of these provisions provide for the public health, safety, morals and welfare. The stated purpose of the ordinance provides no assistance to this Court in determining the object of the ordinance.[4]

On appeal the defendant suggests the objects are noise control and decreasing the attractiveness of liquor-licensed establishments. Although noise control is a proper object for the exercise of police power, *see, e.g., Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) and *Hude v. Commonwealth of Pennsylvania,* 55 Pa.Cmwlth. 1, 423 A.2d 15 (1980), the object of decreasing the attractiveness of bars is not. On this question the reasoning of the Kansas Supreme Court in *City of Baxter Springs v. Bryant,* 226 Kan. 383, 598 P.2d 1051 (1979) is persuasive. The ordinance in that case banned *all* dancing, including dancing by patrons, in bars serving beer. The court focused on the prohibition against patron dancing and held the ordinance unconstitutional as an invalid exercise of the general police power. The municipality argued that the ban would make bars less attractive, decreasing the probability of intoxication, and thereby serving a purpose rationally related to public health, safety, morals and welfare. The court disagreed:

> How far may a municipality go in lessening, by regulation, the attractiveness of the licensed premises? May it ban air conditioning in the summer and heat in

the winter? May it ban ventilating fans? May it ban refrigeration of the products sold? May it limit freedom of speech or expression in such establishments? May it prohibit the proprietor from providing tables or chairs for the use of patrons? Surely all of these bans would make the premises less attractive and less enticing to the public; but such regulations would be wholly unreasonable. Regulations must bear a rational relationship to public health, safety, sanitation, morals, or the general welfare of the community, and they may not be discriminatory and may not encroach on the constitutional rights of the persons affected. A legislative body cannot, under the guise of the police power, enact unequal, unreasonable, and oppressive legislation, or that which is in violation of the fundamental law.

226 Kan. at 391, 598 P.2d at 1058. To the extent that the Ogunquit ordinance reflects the improper object of decreasing the attractiveness of liquor-licensed establishments, it fails to afford due process of law.

■ Ogunquit suggests that the prohibition of amplified and electronically generated music can be sustained on the basis of noise control. Although the object of this portion of the ordinance is valid, the remaining steps under the *Rush* analysis are not satisfied. The means chosen by the municipality are inappropriate to the end and the ordinance is arbitrary and capricious. The ordinance does not prohibit all loud music. It prohibits all music, loud or quiet, which uses amplifiers or electronic equipment. Nonamplified music is permitted without regard to the noise level generated. It is difficult to imagine a scheme less appropriate to the end of noise control,[5] and more arbitrary in its operation.

---

**4.** Section 301.2 provides:

> The purpose of this Ordinance is to require Special Amusement licenses for and to regulate facilities licensed to sell liquor and which also offer entertainment and to require special amusement licenses for and to regulate bottle clubs which also offer entertainment, unless bottle clubs are otherwise prohibited.

**5.** *Compare Hude v. Commonwealth of Pennsylvania,* 55 Pa.Cmwlth. 1, 423 A.2d 15 (1980) upholding the exercise of the state's police power to promote "a *specific* valid state interest: protecting persons outside liquor establishments from interference with a peaceable environment." *Id.* 423 A.2d at 17 (emphasis added; footnote omitted). Unlike the Ogunquit ordinance, the regulation in *Hude* was specif-

Accordingly, we conclude that the restrictions contained in section 302.2 of the Special Amusement Ordinance, as defined by section 301.3, violate the requirements of due process and are an invalid exercise of the police power.

### III.

■ Finally, plaintiffs 52 Main Street, Inc. and Old Acquaintance, Inc. challenge the validity of the bond requirement as set forth in section 303.5 of the Ogunquit ordinance:

> Bond. No Special Amusement permit shall be issued until the licensee posts a bond issued by a bonding company having an office in the State of Maine in the amount of Ten Thousand Dollars ($10,000.00) naming the Town of Ogunquit as beneficiary, the proceeds of which, in case of violation of a permit are to be used by the Town to cover the costs of any police and fire services which may have been necessary as a result of such violation and which cover the expenses incurred by the Town in any enforcement proceedings.

The authority to require a bond as a prerequisite to the issuance of an amusement permit, if it exists, is controlled by the enabling provisions of 28 M.R.S.A. § 702.[6]

·Defendant argues that a municipality has the power to impose licensing fees by virtue of "home rule" (30 M.R.S.A. § 1917 (1978)) and the express authority granted under 28 M.R.S.A. § 702. Relying on dictum in our opinion in *Ace Tire Co., Inc. v. Municipal Officers of Waterville,* 302 A.2d 90, 97 (Me. 1973), defendant urges this Court to recognize a municipal power to eradicate bars and taverns. We recognize that a local option is provided by 28 M.R.S.A. § 101 et seq. and that each municipality is free to prohibit the location of bars within its boundaries. We do not adopt, however, defendant's suggestion that "[h]aving the power totally to eradicate bars and taverns, towns also have the power to drive such establishments out of business." *See Ullis v. Inhabitants of the Town of Boothbay Harbor,* 459 A.2d at 159. Although there is no suggestion that Ogunquit is attempting to eradicate bars by employing a bonding requirement, defendant's assertion of plenary authority over this aspect of the operation of liquor-licensed establishments brings the issue into sharp focus. The affirmative statement in section 702(3) of the permissible subjects of regulation implicitly negates authority to add additional areas of regulation beyond the scope of those required by the statute. *Ullis v. Inhabitants of the Town of Boothbay Harbor,* 459 A.2d at 159.

---

ically tailored to noise control: "'No licensee shall use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device *whereby the sound of music or other entertainment,* or the advertisement thereof, *can be heard on the outside of the licensed premises.'" Id.* 423 A.2d at 16 (emphasis added). The Ogunquit ordinance also contrasts with the noise ordinance upheld in *Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949):

> it shall be unlawful for any person ... to play, use or operate ... any device known as a sound truck, loud speaker or sound amplifier, or radio or phonograph with a loud speaker or sound amplifier ... or any instrument of any kind or character *which emits therefrom loud and raucous noises* ... upon said streets or public places. ...

*Id.* at 78, 69 S.Ct. at 449 (emphasis added).

**6.** In Part II of this opinion we assumed, without deciding, that Ogunquit exercised the general

police power in enacting sections 301.3 and 302.2 to limit the permitted forms of entertainment. The overlap between 30 M.R.S.A. § 2151 (1978) (a general grant of authority to enact ordinances to promote the general welfare and provide for the public safety) and 28 M.R.S.A. § 702 (a specific grant of authority to license entertainment and to impose such other limitations as may be required to protect the public health, safety and welfare) leaves in doubt the question whether a specific statutory power or the general police power is the source of municipal authority in this regard. The bond requirement imposed by section 303.5, however, does not evolve from the general police power and is not a limitation on entertainment. If the authority exists it must be derived from 28 M.R.S.A. § 702 or the "home rule" grant contained in 30 M.R.S.A. § 1917 (1978) ("municipality may ... exercise any power ... which the Legislature has power to confer upon it, which is not denied ... by clear implication ....")

Subsection 1 of section 702 provides in relevant part that: "The municipal officers *shall grant a permit unless* they find that issue of the permit would be detrimental to the public health, safety or welfare, *or would violate municipal ordinances* or rules and regulations." (emphasis added). Subsection 3 controls the permissible scope of those ordinances:

*3. Municipal ordinances or rules and regulations.*

A municipality shall adopt ordinances or authorize the municipal officers to establish written rules and regulations, governing the issuing, suspension and revocation of these permits, the classes of permits and fees for the issuance of these permits, the music, dancing or entertainment permitted under each class, and other limitations on these activities required to protect the public health, safety and welfare. These ordinances or rules and regulations may specifically determine the location and size of permitted premises, the facilities that may be required for the permitted activities on those premises and the hours during which the permitted activities are permitted.

Clearly the municipality may establish "fees" for the issuance of amusement permits and a schedule of fees is established in section 304.2 of the Ogunquit ordinance.[7]

If we were to interpret 28 M.R.S.A. § 702(3) as authorizing Ogunquit, without qualification, to "adopt ordinances . . . governing the issuing . . . of these permits," then the bond requirement would be valid. Such a broad interpretation, however, ignores the remaining language of section 702(3) and undercuts the specificity with which the legislature has defined the permissible scope of such an ordinance. Section 303.5 of the ordinance requiring the posting of a $10,000.00 bond can hardly be classified as "establishing a fee," particularly where fees are established elsewhere in the ordinance. The scope of the regulations

mandated by section 702(3) does not encompass the requirement of a bond. We conclude that section 303.5 of the ordinance exceeds the authority granted by 28 M.R.S.A. § 702(3) and is therefore invalid.

In view of the foregoing it is not necessary to address the issues raised by plaintiffs with respect to the First Amendment of the United States Constitution and Article I, section 4 of the Maine Constitution.

The entry must be:

Judgment of the Superior Court reversed, remanded for entry of declaratory relief consistent with the opinion herein.

All concurring.

---

**7.** We do not suggest that a bond could not be required in lieu of a license fee or as the practical equivalent of such a fee.